471 P.2d 609 (1970)
AETNA CASUALTY AND SURETY COMPANY, Plaintiff in Error,
v.
Morton KORNBLUTH and Sydney Kornbluth, Defendants in Error.
No. 70-098, (Supreme Court No. 23378.)
Colorado Court of Appeals, Div. II.
April 28, 1970.
Rehearing Denied May 21, 1970.
Certiorari Denied July 16, 1970.
Tilly & Graves, James L. Tilly, Denver, for plaintiff in error.
Irving Oxman, Sheldon Emeson, Denver, for defendants in error.
Selected for Official Publication.
DUFFORD, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and was subsequently transferred to the Court of Appeals under the authority vested in the Supreme Court.
The defendants in error, Sydney Kornbluth and Morton Kornbluth, were plaintiffs in the trial court. They shall be referred to in this opinion either by name or as "the insured." Their action was brought against Aetna Casualty & Surety Company, the plaintiff in error here and the defendant below. Such company shall be referred to as "Aetna" or as "the insurer." The action brought by the Kornbluths against Aetna was to collect for a judgment sum entered against the Kornbluths in excess of the policy limits contained *610 within an automobile liability and physical damage policy issued by Aetna to the Kornbluths.
Aetna provided liability coverage of $10,000.00 per person, $20,000.00 per accident, and $5,000.00 property damage. In a civil action brought by Algie Steen and Leola Steen against the Kornbluths, the Steens sought damages for $57,530.00 for injuries incurred by them as the result of an automobile accident involving them and an automobile driven by Morton Kornbluth and owned by his father, Sydney Kornbluth. In such civil proceedings the Kornbluths were represented by Aetna's attorney. All investigations and pretrial conferences pertaining to any possible settlement of such civil action were conducted either by employees of Aetna or by the attorney employed by Aetna to defend against the Steens' lawsuit. The trial of the damage action by the Steens against the Kornbluths resulted in the jury awarding $23,862.02 in damages to Mr. Steen and $2,362.95 to Mrs. Steen. Aetna paid the entire judgment in favor of Mrs. Steen and paid $10,000.00 plus interest and costs on the judgment in favor of Mr. Steen. This left the Kornbluths liable to Mr. Steen for a judgment balance in the amount of $13,862.02.
Because of such judgment obligation on the part of the Kornbluths, this action was commenced by them against Aetna. The Kornbluths in their complaint alleged that Aetna did not exercise good faith in attempting to settle the Steens' claim against the Kornbluths, and that Aetna was guilty of gross negligence and of bad faith in failing to settle the claims of the Steens for amounts which were within their policy limits. It was this issue which was tried to the trial court without jury, and which is the subject of this appeal.
In its appeal Aetna charges primarily that the trial court erred in not dismissing Kornbluths' case at the conclusion of the plaintiffs' evidence. In this connection Aetna charges that the trial court mingled two standards by which the liability of Aetna should be determined; namely, whether Aetna acted negligently or whether it acted in bad faith. Aetna also contends on this point that in no event did the plaintiffs sustain their burden of proof under either of such standards. Secondly, Aetna urges that, as a matter of law, Aetna could not be held liable in a case of this kind for its failure to settle within the policy limits unless the evidence before the court establishes that Aetna knew or should have known, in the exercise of reasonable judgment, that the outcome of the case between the Steens and the Kornbluths would in all likelihood be in excess of the policy limits. Third, Aetna individually attacks certain findings of fact and conclusions of law reached by the trial court on the basis that they were not supported by the record.

1. INSURER'S STANDARD OF LIABILITY
Essential to a resolution of all questions involved in this case is a determination of the standard by which the liability or lack of liability on the part of Aetna to the Kornbluths will be measured. An examination of the authorities bearing on this question reveals that various tests or standards have been applied by different courts. Annot., 40 A.L.R.2d 168. Some courts have held that the matter of settlement lies within the sole discretion of the insurer, and that it is under no duty to the insured to accept a given settlement offer. McDonald v. Royal Indemnity Insurance Co., 109 N.J.L. 308, 162 A. 620. This is a view which we hereby specifically reject. We also specifically reject the theory that the insurer carries an implied obligation to accept any settlement offer which is within the insurance policy limits. To our knowledge such view has not been accepted by any jurisdiction. There remain three so-called standards or tests for measuring the possible liability of the insuring company in situations of this type. These have been categorized as (1) the duty of insurer to exercise good faith and act with equal consideration for its interests and those of its insured; (2) proof of bad faith on the part *611 of the insurer; and (3) negligence on the part of the insurer. There has been no expression by the Colorado Supreme Court as to which of these standards or tests is applicable within this jurisdiction. Our law has been presumed to be within the realm of the good faith and equal consideration standard. United States Fidelity and Guaranty Company v. Lembke, 10 Cir., 328 F.2d 569.
The distinctions between the various standards or tests which we have enumerated for consideration appear to us to be largely illusory and quite frequently more a matter of semantics than legal principle. In reviewing the cases, it appears to us that some courts, in evaluating the scope of responsibility of the insuring company and speaking of good faith, are often dealing in terms of due care or lack of negligence, and that others, when speaking of bad faith on the part of the insuring company, are actually dealing with negligence on the part of the insuring company. As has been noted elsewhere, the terms of "bad faith" and "negligence" in particular have often been used interchangeably, and, in fact, are to some extent interchangeable. 7A Appleman, Insurance Law and Practice, (1962 Ed.) Sec. 4712.
At the root of all the standards is the basic concept that the duty which is owed by the insurer to the insured arises out of the contractual relationship of the parties. By the terms of the insurance contract, the absolute control of the defense of actions against the insured is turned over to the insurer and the insured is excluded from any interference in any negotiation for settlement. The possession of such right necessarily imposes a correlative duty on the part of the insurance company to ascertain all facts upon which a decision to settle or to compromise a given claim against its insured can be based if the asserted claim falls beyond the policy limits. The duty imposed stretches beyond this and requires, not only the full ascertainment of facts upon which to base a judgment and the making of a judgment, but there must be a willingness, within the policy limit, to spend money in purchasing immunity for the insured, and due care must be exercised in ascertaining the facts, learning the law, and appraising the danger to the insured. Dumas v. Hartford Accident & Indemnity Co., 94 N.H. 484, 56 A.2d 57. Because of the nature of this duty, it is our opinion that the approach by which the discharge or failure to discharge such duty can best be measured is one which employs basically and primarily a general standard of negligence. We, therefore, rule that the decision on the part of an insurer relative to the question of settlement must be preceded by the exercise of that degree of care and diligence which a reasonably prudent person would use under the same or similar circumstances.
Having decided here that the insurer's standard of liability should be basically measured in terms of negligence, we do not agree with Aetna's contention that any error which was prejudicial to Aetna was committed by the trial court in mingling the theoretical standard of negligence with that of bad faith. As has been stated elsewhere:
"Terms which are not strictly convertible or synonymous have been used by different courts to indicate the same thing. Negligence has been used by some courts to mean the same thing that other courts have designated as bad faith. Bad faith, especially, is a term of variable significance and rather broad application. Generally speaking, good faith means being faithful to one's duty or obligation; bad faith means being recreant thereto." Dumas v. Hartford Accident & Indemnity Co., supra.
In the instant situation, the most which can be charged against the trial court is that it perhaps placed a greater proof burden on the Kornbluths than they were, in our view, required to carry. Such being the case, it resulted in no prejudice to Aetna.

*612 2. PROOF OF FAILURE TO MEET THE STANDARD
Aetna's second principal charge of error is that the trial court held Aetna liable when the plaintiffs proved nothing more than facts relating to the predictability of liability on the part of the Kornbluths to the Steens, and that additionally the plaintiffs should have been required to prove that Aetna knew or should have known, in the exercise of reasonable judgment, that the outcome of the Steens' claim could result in a judgment which would in all likelihood be in excess of the policy limits. We do not disagree that Aetna's evaluation of possible damage amounts was an element in this case; however, we do not feel that the record in this case discloses that the trial court held Aetna liable to the Kornbluths for the sole reason that Aetna had negligently appraised the liability aspects of the case between the Steens and the Kornbluths. At trial, the more significant facts which were developed by the plaintiffs were as follows:
(a) The Steens, acting through their legal counsel, had offered to fully settle all of their claims against the Kornbluths, first, for the sum of $3,422.29; later for the sum of $5,000.00; and finally, at the time of pretrial conference, for the amount of $7,500.00.
(b) The maximum settlement amount which had ever been extended by Aetna to the Steens was $2,000.00.
(c) Aetna made no attempt, either through its adjusters or through the legal counsel subsequently employed by it, to interview or question the eye-witness to the Steen-Kornbluth accident, nor to interview or examine the investigating officer of the accident. Aetna was advised by the Steens' attorney as to the existence of an eye-witness at the commencement of the settlement negotiations, and at the time of pretrial conference Aetna became fully aware of the name of such witness.
(d) Although disputed, there was some evidence that agents of Aetna at various times assured the Kornbluths that the action by the Steens could not exceed the insurance coverage provided by Aetna, and that the employment of separate counsel by the Kornbluths was not necessary.
(e) There were available to Aetna three different medical appraisals concerning Mr. Steen's injuries, and one of these indicated a degree of permanent disability.
It was largely from these facts that the trial court reached its conclusion that Aetna had acted negligently in not settling or compromising the Steens' claim against the Kornbluths. From a review of such evidence, it does not appear to us that the trial court restricted its analysis of Aetna's liability solely to the question of whether Aetna negligently appraised the liability aspects of the Steen-Kornbluth case. Rather it appears to us that the trial court directed itself to determining if Aetna had acted improperly in investigating and appraising the totality of such case. We find sufficient evidence upon which the trial court could have concluded that Aetna negligently failed to make a reasonable and prudent investigation of all aspects of the Steen-Kornbluth case, and from this conclusion alone it could have properly decided that Aetna's omissions resulted, not only in a failure to appraise properly the case from a liability standpoint, but also from the standpoint of the probable damages award which might ultimately be entered against the Kornbluths.

3. DISCREPANCIES IN FINDINGS AND CONCLUSIONS
Aetna's final grounds for reversal relate to fifteen alleged errors in the trial court's findings of fact and conclusions of law. In this connection Aetna charges basically that the findings or conclusions are either not accurate or not supported by the record in this case. In reviewing the findings and conclusions of law complained of, it is our opinion that the findings and conclusions which were conceivably erroneous were not material to a determination of the basic questions of this case. Those findings and conclusions which appear *613 to have been material to this case are, in our opinion, supported by the record, at least to the extent that they should not be disturbed on appellate review. Where there is present in a record enough evidence to support trial court findings and conclusions, we are obligated to view the same as conclusive upon this court. Andersen-Randolph v. Taylor, 146 Colo. 170, 361 P.2d 142, Harvey v. Irvin, 156 Colo. 391, 401 P.2d 266, Schwenk v. Bolis, 157 Colo. 392, 402 P.2d 643.
The judgment of the trial court is affirmed.
DWYER and ENOCH, JJ., concur.