FARMERS GROUP, INC., a California corporation, Farmers Insurance Exchange, a California corporation, and Mid-Century Insurance Company, a California corporation, Plaintiffs-Appellees,

v.

R. Bruce TRIMBLE,
Defendant-Appellant.

No. 81CA0851.

Colorado Court of Appeals,
Div. III.

Aug. 26, 1982.

Rehearing Denied Sept. 23, 1982.

Certiorari Granted Jan. 17, 1983.

Rector, Retherford, Mullen & Johnson, J. Stephen Mullen, Colorado Springs, for plaintiffs-appellees.

Pryor, Carney & Johnson, P.C., Thomas L. Roberts, W. Randolph Barnhart, Englewood, for defendant-appellant.

KIRSHBAUM, Judge.

Defendant, R. Bruce Trimble, appeals the dismissal of his counterclaims against plaintiff insurance companies. We affirm in part and reverse in part.

The following facts are undisputed. Farmers Group, Inc., is the attorney-in-fact management company for various subsidiary insurance companies, including Farmers Insurance Exchange (Farmers Exchange) and Mid-Century Insurance Co. (Mid-Century). In 1977, Mid-Century issued a homeowner's liability insurance policy to defendant and his wife. In 1978, Farmers Exchange issued an automobile liability insurance policy to defendant.

On November 6, 1978, while defendant and his son, Douglas, were insureds under these policies, Douglas drove defendant's automobile on to the front yard of the residence of Robert Jensen, seriously injuring Jensen. Defendant promptly reported the incident to a Farmers Exchange agent, and that company immediately commenced an investigation. The Farmers Exchange automobile liability policy contained a bodily injury liability limit of $50,000 per person. It also authorized Farmers Exchange to make such investigation and settlement of claims as it deemed expedient, and provided that Farmers Exchange had the right and duty to defend, at its own expense, suits against defendant.

On November 20, 1978, a Farmers Exchange agent forwarded a letter to Douglas stating that the automobile policy's "intentional act exclusion" might operate to deny him coverage; that the company would investigate the accident "wth a full reservation of its rights"; and that "by negotiating for settlement, or settlement" the company did not "waive its right to deny coverage."

At some time prior to mid-December 1978, Earl Chaney, a senior Farmers Exchange claims adjuster, stated in writing that he would require the full $50,000 limit in settlement authority. By the end of 1978, Farmers Exchange knew that Jensen already had sustained approximately $10,000 in damages and that his injuries were permanent.

In early 1979, Jensen offered to settle the case for $50,000, the policy limit of the automobile policy. Farmers Exchange rejected the offer, stating that the company was not in a position to settle because it had questions about the coverage under its policy and because there was a possibility that the carrier of Jensen's homeowner's policy might assert a personal injury protection benefits lien for medical payments made to Jensen. Farmers Exchange at no time informed defendant or his son of Jensen's settlement offer or of the facts disclosed by its investigation.

In March 1979, Jensen filed a civil action against defendant, Douglas, and a third

party asserting claims for $200,000 compensatory and $200,000 exemplary damages. The claims against defendant were based on negligent entrustment and the family car doctrine.

On April 9, 1979, the adjuster, Chaney, selected an attorney (the "retained attorney") to defend defendant and his son against Jensen's claims. Chaney informed the retained attorney that Farmers Exchange had sent a "reservation of rights" letter to Douglas concerning the automobile policy's intentional act exclusion. Chaney also informed defendant and Douglas, by letter of April 9, 1979, that they could retain private counsel, at their own expense, to protect their personal interests with respect to a potential judgment in excess of the policy limits and exemplary damages not covered by the policy. The letter also stated that it was not necessary for them to retain private counsel because the attorney retained by Farmers Exchange "will represent your personal interests without cost to you." The letter noted that Jensen's demands exceeded the policy limits, but did not explain the available policy limits and did not refer specifically to either the automobile policy or the homeowner's policy. By June 1979, Farmers Exchange had reserved $50,000 in connection with Jensen's lawsuit and had estimated the value of Jensen's claims to be between $75,000 and $150,000.

In November 1979, defendant's deposition was taken and Jensen's attorney discovered the existence of the Mid-Century homeowner's policy. Subsequently, the retained attorney informed defendant that Jensen was seeking to establish the applicability of the Mid-Century homeowner's policy $100,000 liability coverage. On November 12, 1979, Jensen's attorney informed the retained attorney and a Farmers Exchange agent that the case of *Douglass v. Hartford Insurance Co.*, 602 F.2d 934 (10th Cir.1979) established coverage for Jensen's negligent entrustment claim under the Mid-Century policy. This letter was forwarded to Chaney, but not to defendant.

In March 1980, the retained attorney filed a motion for summary judgment respecting Jensen's claims. The trial court initially granted summary judgment on the negligent entrustment claim. However, after considering Jensen's motion for reconsideration, it reinstated that claim. Prior to the trial court's reinstatement of that claim, the retained attorney informed defendant by letter that the negligent entrustment claim had been dismissed and that he advised defendant to retain "an attorney to protect you regarding the potential claim in excess of your policy limits." An original trial date of June 10, 1980, was continued to September 1981, to permit resolution of insurance coverage issues.

In October 1980, the plaintiff insurance companies instituted this suit against defendant. Their complaint sought a declaration that the Mid-Century homeowner's policy provided no coverage with respect to the negligent entrustment claim asserted by Jensen against defendant in the pending action. Defendant retained an attorney, answered the complaint, and asserted counterclaims against plaintiffs.

In April 1981, Jensen's claims against defendant were settled. Jensen received $50,000 under the Farmers Exchange policy and $12,000 under the Mid-Century policy. In connection with that settlement, plaintiffs also reimbursed defendant for certain attorney fee costs defendant had incurred in defending this declaratory action, and defendant released plaintiffs from any further claims for attorney fees in this case. Plaintiffs' complaint has been dismissed as moot.

Defendant's amended counterclaims, alleging five claims for relief, seek compensatory and punitive damages allegedly caused by the plaintiffs' conduct in handling the claims asserted by Jensen against defendant and Douglas. When the trial court granted plaintiffs' motion to dismiss these counterclaims, defendant perfected this appeal.

## I. NEGLIGENCE

Defendant first contends that the trial court erroneously granted plaintiffs' motion

for summary judgment on his first counterclaim for negligence. We agree.

Defendant's first counterclaim alleges, *inter alia,* that plaintiffs acted negligently by summarily rejecting Jensen's settlement offers and by allowing Jensen to institute litigation against defendant, thus exposing defendant to the risk of a large excess judgment for over two years. It alleges damages for attorney fees, expenses, and costs; severe emotional distress; loss of sleep; and impairment of credit rating.

An insurance carrier representing an insured pursuant to the requirements of an insurance contract must exercise reasonable care in fulfilling its duty of representation. *Aetna Casualty & Surety Co. v. Kornbluth,* 28 Colo.App. 194, 471 P.2d 609 (1970). The trial court concluded that defendant's first counterclaim alleged negligence. We agree that this counterclaim sufficiently alleges the tort of negligent performance of a contract and the trial court's conclusion is not disputed on appeal. The trial court further concluded, however, that defendant's alleged damages were not compensable in a negligence action. We disagree with this conclusion.

To recover on a claim of negligence, a plaintiff must prove that he suffered injury as a result of the defendant's negligence. *Doyle v. Linn,* 37 Colo.App. 214, 547 P.2d 257 (1975). Absent injury, there is no action. A contrary result would encourage baseless litigation and would ignore the fundamental principle that one who fails to exercise reasonable care is liable only for the foreseeable consequences of the breach of duty, not for the breach per se. *See DeCaire v. Public Service Co.,* 173 Colo. 402, 479 P.2d 964 (1971).

Here, defendant claims economic loss incurred by his having to employ an attorney in September and October of 1979. Defendant's deposition reveals that he was forced to obtain the attorney's services in defense of the suit filed by Jensen because a date for the taking of defendant's deposition in that case was approaching and defendant was not able to discuss the proceeding with the retained attorney. Defendant indicated that at the time of the deposition he had paid the attorney $280 of a fee totalling approximately $1,280.

We conclude that the cost of hiring the attorney, if caused by plaintiffs' negligence, could be considered damages naturally flowing from the failure of the insurer to exercise reasonable care in representing the insured in the course of litigation. Such costs are no less foreseeable than the overage judgments which have traditionally formed the basis for damage claims in this type of litigation. *See Aetna Casualty & Surety Co. v. Kornbluth, supra.*

Contrary to plaintiffs' argument, the principles governing recovery of the cost of attorney fees from one's opponent in a lawsuit are not applicable here. *See, e.g., E.F. Hutton & Co. v. Anderson,* 42 Colo.App. 497, 596 P.2d 413 (1979). As our Supreme Court stated in *Holt v. Mitchell,* 96 Colo. 412, 43 P.2d 388 (1935):

> "It is a well recognized proposition of law that one who relies on the negligence of another as a ground for recovery ... must show that by reason of such negligence he has been damaged or *has done something he would not have done* ... to his prejudice in reliance thereon." (emphasis added)

Accordingly, plaintiff is not precluded from recovering as damages his costs in hiring an attorney to represent him in defending the claims brought by Jensen. *See generally Fitzgerald v. Edelen,* 623 P.2d 418 (Colo.App.1980); *Hotchkiss v. Preble,* 33 Colo.App. 431, 521 P.2d 1278 (1974). For the same reasons, we conclude that defendant's allegation of damages based on credit rating impairment may be compensable if, as alleged, such damages were caused by plaintiffs' negligence.

However, defendant's prayer for damages for emotional disturbance under his negligence claim was correctly rejected

by the trial court. In *Towns v. Anderson,* 195 Colo. 517, 579 P.2d 1163 (1978), our Supreme Court held that recovery could be had under the theory of negligent infliction of emotional distress for emotional injuries even though there was no actual impact. However, the Court specifically noted that such rule applied only when a plaintiff "himself is subjected to an unreasonable risk of bodily harm due to the negligence of another." *Towns v. Anderson, supra.* Defendant does not allege that he was subjected to any risk of bodily harm. Hence, he is not entitled to claim damages for emotional disturbance as a result of plaintiffs' alleged negligence.

## II. BAD FAITH BREACH OF INSURANCE CONTRACT

Defendant next contends that his second counterclaim was erroneously dismissed for failure to state a claim upon which relief can be granted. We agree.

The second counterclaim alleges that although Farmers Exchange knew as early as November 1978 that it had no reasonable basis to rely upon the automobile insurance policy's intentional act exclusion to contest coverage, plaintiffs nevertheless determined, unilaterally and without notice to defendant, to obtain a summary judgment dismissing Jensen's negligent entrustment claim. The counterclaim alleges that this decision represented an attempt to deprive defendant of coverage under his homeowner's policy and exposed him to a potential excess judgment. The counterclaim also alleges that the retained attorney opposed reinstatement of Jensen's negligent entrustment claim after it had been dismissed; that plaintiffs concealed offers of settlement and potential conflicts of interest from defendant; and that the plaintiffs

engaged in a malicious, unethical, unfair, reckless, and bad faith course of conduct with respect to defendant.

■ When construed in defendant's favor, *Davidson v. Dill,* 180 Colo. 123, 503 P.2d 157 (1972), this counterclaim states a claim for relief based upon the tort of bad faith breach of insurance contract.[1] As noted above, an insurance carrier may be liable to its insured for failure to exercise reasonable care in fulfilling its duty of representation. *Aetna Casualty & Surety Co. v. Kornbluth, supra.* Such liability is based upon traditional common law concepts of negligence, or an unintentional but unreasonable failure to discharge a duty owed to another.

■ From the initial articulation of its perimeters by the California Supreme Court, the tort of bad faith breach of insurance contract has been characterized by intentional or willful conduct. *Crisci v. Security Insurance Co.,* 66 Cal.2d 425, 58 Cal. Rptr. 13, 426 P.2d 173 (1967); *Comunale v. Traders & General Insurance Co.,* 50 Cal.2d 654, 328 P.2d 198 (1958). An insured injured by such intentional conduct of an insurer is entitled to recover damages based upon traditional tort principles of compensation for resultant injuries actually suffered, including emotional distress, rather than upon concepts derived from contract law. *Anderson v. Continental Insurance Co.,* 85 Wis.2d 675, 271 N.W.2d 368 (1978); *Crisci v. Security Insurance Co., supra.* And see, *Chavers v. National Security Fire & Casualty Co.,* 405 So.2d 1 (Ala.1981); *Bibeault v. Hanover Insurance Co.,* 417 A.2d 313 (R.I.1980).

■ Although somewhat amorphous in form, the tort of bad faith breach of insurance contract is distinguishable from

---

1. The parties and the trial court have consistently characterized this claim as a "bad faith" claim. The intentional tort here considered has been identified as applicable to contexts other than the relationship between an insurer and its insured. *See, e.g.,* Louderback, & Juika, *Standards for Expanding the Tort of Bad Faith* *Breach of Contract,* 16 U.S.F.L.Rev. 187 (1982). *But see Allen, Insurance Bad Faith Law: The Need for Legislative Intervention,* 13 Pac.L.J. 833 (1982). We conclude that the term "bad faith breach of insurance contract" is most appropriate in view of the allegations here and the applicable authorities.

such other torts as outrageous conduct and intentional infliction of mental distress. *See Chavers v. National Security Fire & Casualty Co., supra.* In order to prevail on a claim of bad faith breach of insurance contract, an insured must establish the absence of any reasonable basis for the conduct complained of. *Noble v. National American Life Insurance Co.,* 128 Ariz. 188, 624 P.2d 866 (1981); *Anderson v. Continental Insurance Co., supra.* The intent which a plaintiff must establish to prevail on such a claim is not equivalent to the state of mind required to prove punitive damages. *Bibeault v. Hanover Insurance Co., supra.*

■ In this case, the affidavits and depositions establish that plaintiffs on occasion indicated to defendant that plaintiffs questioned coverage, and that defendant challenged the accuracy of such statements when made. Thus, whether and for what period of time questions of coverage were in fact entertained by plaintiffs, and whether at all times such questions constituted a reasonable basis for plaintiffs' conduct, are disputed questions of fact which must be resolved by the jury. In these circumstances, neither summary judgment nor dismissal for failure to state a claim for relief was permissible at the pretrial stage of the proceedings.

### III. WILLFUL BREACH OF CONTRACT

Defendant next contends that the trial court erred by granting the plaintiffs' motion for summary judgment on his third counterclaim. We agree.

■ In this counterclaim defendant alleges that plaintiffs' conduct constituted "a willful and wanton breach of contract of a nature sufficiently aggravated to entitle defendant to compensatory damages for mental suffering . . . ." A non-breaching party to a contract may recover damages for mental anguish alone when the breach is accompanied by willful and wanton conduct. *See McCreery v. Miller's Groceteria*

*Co.,* 99 Colo. 499, 64 P.2d 803 (1936); *Fitzsimmons v. Olinger Mortuary Ass'n,* 91 Colo. 544, 17 P.2d 535 (1932). Here, the trial court reasoned that plaintiffs could not be found to have breached the agreement because they ultimately defended and ultimately settled the claim assessed against defendant.

■ However, defendant's third counterclaim alleges a breach of the implied covenant of fair dealing by failing to represent defendant's interests properly and promptly. Whether the plaintiffs breached that particular implied covenant under all the circumstances of his case is a question to be decided by the finder of fact. Hence, the grant of summary judgment on this counterclaim constituted error. *Abrahamsen v. Mountain States Telephone & Telegraph Co.,* 177 Colo. 422, 494 P.2d 1287 (1972).

### IV. OUTRAGEOUS CONDUCT

Defendant next contends that the trial court erroneously granted summary judgment on defendant's outrageous conduct counterclaim. We agree.

Defendant alleged in his fourth counterclaim that plaintiffs' conduct was outrageous and was intended to inflict severe emotional distress upon him. The trial court granted summary judgment for plaintiffs after concluding that, as a matter of law, "the conduct of plaintiffs' agents and employees does not rise to the level of outrageousness and atrocity required."

■ The tort of intentionally inflicting emotional distress by outrageous conduct was first recognized in Colorado in 1970 when our Supreme Court adopted *Restatement (Second) of Torts* § 46 (1965). *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753 (1970). Comment *d* of that *Restatement* section defines extreme and outrageous conduct as conduct which goes "beyond all possible bounds of decency, . . . as . . . atrocious, and utterly intolerable in a civilized

community." This definition is somewhat qualified, however, by the rule that "[c]onduct, otherwise permissible, may become extreme and outrageous if it is an abuse by the actor of a position in which he has actual or apparent authority over the other, or the power to affect the other's interests." *Zalnis v. Thoroughbred Datsun Car Co.,* 645 P.2d 292 (Colo.App.1982); *see Restatement (Second) of Torts* § 46 comment e. *See generally W. Prosser, Torts* § 12 at 56 (4th ed. 1971).

 Although the question of whether certain conduct is outrageous is ordinarily a question for the trier of fact, *see Enright v. Groves,* 39 Colo.App. 39, 560 P.2d 851 (1977), it is for the court to determine, in the first instance, whether reasonable persons could differ on the outrageousness issue. *First National Bank v. Collins,* 44 Colo.App. 228, 616 P.2d 154 (1980); *see Restatement (Second) of Torts* § 46 comment h. However, a trial court's conclusion of law on this issue is not binding on an appellate court. *Zalnis v. Thoroughbred Datsun Car Co., supra.* Here, our evaluation of the totality of the plaintiffs' alleged conduct leads us to conclude that reasonable persons could differ on the question whether there was outrageous conduct. *Cf. Baxter v. Royal Indemnity Co.,* 285 So.2d 652 (Fla.Dist.Ct.App.1973) (Spector, J., dissenting). Hence, summary judgment was improper.

## V. VIOLATIONS OF § 10–3–1104(1)(h), C.R.S.1973

Defendant finally contends that the trial court's dismissal without prejudice of his fifth counterclaim was error. We disagree.

Defendant's fifth counterclaim alleges that the plaintiff insurance companies breached statutory duties set forth in § 10–3–1101, et seq., C.R.S.1973, "by knowingly committing or committing with such frequency as to indicate a general business practice the . . . unfair insurance practices . . ." In dismissing this counterclaim for failure to state a claim upon which relief could be granted, the trial court concluded that defendant had alleged no facts from which an inference could be drawn that plaintiffs had conducted a general business practice of violating such statutory provisions. We affirm the trial court's judgment, but on other grounds.

Section 10–3–101, et seq., C.R.S.1973, contains numerous provisions concerning the regulation of insurance companies. Sections 10–3–1101–1112, C.R.S.1973, are intended "to regulate trade practices in the business of insurance by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices, and by prohibiting the trade practices so defined or determined." Section 10–3–1101, C.R.S.1973. Section 10–3–1104, C.R.S.1973 (1981 Cum.Supp.), defines or illustrates various unfair methods of competition and unfair or deceptive acts or practices. Subsection (1)(h) of that section details unfair claim settlement practices.

Section 10–3–1106, C.R.S.1973 (1981 Cum. Supp.), authorizes the insurance commissioner to investigate insurance business for the purpose of discovering prohibited acts or practices. Section 10–3–1108, C.R.S.1973 (1981 Cum.Supp.) permits the commissioner to order any person who has engaged in prohibited conduct to cease and desist from such activity. This section also permits the commissioner to impose monetary penalties or suspend or revoke licenses in the event statutory provisions are violated. The commissioner may impose additional penalties in the event a cease and desist order is disobeyed, § 10–3–1109, C.R.S.1973. Furthermore, his powers under § 10–3–1101, C.R.S.1973, are "additional to any other powers to enforce any . . . penalties or forfeitures authorized by law with respect to the methods, acts, and practices declared in this part 11 to be unfair or deceptive." Section 10–3–1111, C.R.S.1973.

The above described statutory scheme does not expressly provide for or authorize

a private civil remedy. Hence, we must inquire whether § 10–3–1104(1)(h), C.R.S. 1973, impliedly creates a private right of action for alleged violations of the statute. The intent of the General Assembly governs this inquiry. *See Rancho Colorado, Inc. v. City of Broomfield,* 196 Colo. 444, 586 P.2d 659 (1978); *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981).

The statute in question defines several legal duties of insurers and provides numerous sanctions in the event those duties are not performed. The General Assembly could have added the remedy of a private civil action for damages to its catalog of sanctions. It did not do so, however, and in the absence of any indication of contrary legislative intent, we must assume that the specific remedies designated by the General Assembly exclude all others. *Silverstein v. Sisters of Charity,* 38 Colo.App. 286, 559 P.2d 716 (1976); *see generally Quintano v. Industrial Commission,* 178 Colo. 131, 495 P.2d 1137 (1972). We conclude that this statute may not serve as the sole basis for a civil action instituted by private citizens allegedly aggrieved by the conduct of their insurers. Thus, we affirm the trial court's dismissal of defendant's fifth counterclaim.

The judgment is affirmed respecting the dismissal of defendant's fifth counterclaim and the dismissal of that portion of defendant's first counterclaim which alleges a claim for damages for emotional disturbance. The judgment is reversed respecting the dismissal of the remainder of defendant's first counterclaim and defendant's second, third, and fourth counterclaims, and the cause is remanded for further proceedings respecting those claims.

SMITH and KELLY, JJ., concur.