**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 31 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SIGNATURE DEVELOPMENT
COMPANIES, INC., a Colorado
corporation; and VILLAGE HOMES,
LTD., a Colorado corporation,

        Plaintiffs-Appellants,

    v.

ROYAL INSURANCE COMPANY
OF AMERICA, an Illinois
corporation,

        Defendant-Appellee.

No. 99-1372

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 97-WM-2688)**

Kevin F. Amatuzio of Montgomery, Kolodny, Amatuzio, Dusabek &
Parker, L.L.P., Denver, Colorado for the Appellants.

Laurence McHeffey of McElroy, Deutsch & Mulvaney, Denver, Colorado
for the Appellee (with Frank C. Porada on the briefs).

Before **HENRY** , **BRISCOE** , Circuit Judges and **ALLEY** , District Judge. *

---

* The Honorable Wayne E. Alley, Senior District Judge for the Western
District of Oklahoma, sitting by designation.

**HENRY** , Circuit Judge.

Signature Development Companies, Inc. and Village Homes, Ltd., both Colorado entities (collectively, "Signature"), appeal from the district court's grant of summary judgment in favor of Royal Insurance Company, an Illinois corporation ("Royal"). For the reasons set forth below, we affirm the district court's grant of summary judgment to Royal as to Royal's duty to indemnify and we remand to the district court for calculation of Royal's contribution as to attorneys' fees and costs of defense.

## I. BACKGROUND

Signature is a developer of custom homes. Royal issued a general liability insurance policy to Signature for the period January 1, 1989 to August 1, 1990; after that time Signature changed insurance carriers to Aetna Casualty & Surety Company, which later became Travelers Property Casualty Company ("Travelers").

In April 1996, a group of homeowners that lived in Highlands Ranch Colorado sued Signature in Colorado state court, alleging that swelling and expanding soils caused property damages to their homes purchased on or after August 3, 1987 (the "Wernli litigation"). The plaintiffs, later certified as a class,

alleged several claims against Signature including negligence, breach of contract, breach of warranties, and violation of the Colorado Consumer Protection Act. A separate lawsuit, filed by an individual family in a separate development and county, alleged similar breaches (the "Long litigation').

Signature notified Travelers of the Wernli and Long litigations within two weeks of the filing of the Wernli litigation. Travelers retained the law firm of Long & Jaudon to defend Signature, subject to a reservation of rights. Travelers advised Signature that, because some of the allegations in the Wernli and Long litigations preceded Travelers's coverage period, prior carriers ought to receive notification.

Signature's counsel notified Royal about the Wernli and Long litigations on June 24, 1996. On August 2, 1996, Royal notified Long & Jaudon that it was a carrier for Signature from January 1, 1989 through January 1, 1990, for Signature, and that "if it [wa]s determined that a defense [was] owed we will reimburse/issue payment for all reasonable fees and cost incurred subsequent to the initial tender of this matter." Rec. vol. 2 at 00625. Royal later acknowledged that its liability coverage actually extended through August 1, 1990, and no longer disputes this fact.

On August 22, 1996, Royal sent Signature a letter outlining its formal position on coverage, where it agreed to defend Signature in both litigations,

subject to a detailed reservation of rights. A reservation of rights enables an insurer to assert future defenses based on noncoverage under the policy.     See 14 Couch on Ins. § 202:38 (3d ed. 1996). It serves to provide the insured with temporary protection, "even though it may turn out that the insured was not entitled to such protection." Id.

Specifically, Royal's letter stated:

> The Complaints are silent as to the timing of any alleged property damage for which damages are sought. Royal expressly reserves its right to disclaim coverage should it be determined that all or part of the damages which may be obtained against the Insured are determined to be on account of property damages which took place either before the policy period or subsequent to the policy period.

Aple's Supp. App. at 4. Royal also reserved the "right to seek reimbursement of any monies spent in . . . defense costs." Id. at 14. In addition, Royal disclaimed coverage as to property damages resulting from incorrectly performed operations by Signature or its contractors or subcontractors. See id. at 6.

On January 31, 1997, Signature's counsel notified Royal that Travelers and Signature were engaged in settlement negotiations with the plaintiffs and that discovery had been stayed to encourage early settlement. Travelers and Signature hoped to settle the pending litigation for approximately $4.0 million. Specifically, Signature's counsel mentioned a February 4, 1997, meeting at which Royal was encouraged to attend. Royal neither responded to the letter nor attended the meeting.

-4-

There were fifty-one homes that were closed upon and thus covered by Royal's policy during the period from January 1, 1989 through August 1, 1990, while Royal was Signature's insurance carrier. Royal's investigator, Mr. Aiello, concluded that these homes had experienced structural problems as a result of expansive soil and that "a majority of these homes began experiencing soils related problems within the first year." Rec. vol. 2, tab 11, ex. 6 at R00313. In addition, Mr. Aiello stated that the damages "could be a result of poor workmanship" or "shifting of the structure." Id. Royal calculated its coverage obligation as $46,603.43, under an allocation method that Signature disputes. If Mr. Aiello's conclusion as to poor workmanship was true, the damages would fall under Royal's disclaimer as to incorrectly performed operations.

In a March 13, 1997 letter, Royal extended a $100,000.00 offer of contribution to ongoing settlement negotiations, stating that "not all of the 51 homes have complained of damages." Rec. vol. 3, tab 13.L, p. 560. Royal tendered a check for $100,000.00 in full settlement of its obligation, which Signature refused to accept. Royal included a restrictive endorsement on the check under which Signature would likely forfeit any rights to further payment from Royal.

The Wernli and Long litigations eventually settled for $4.0 million. Travelers agreed to assume seventy-five percent of the settlement. Signature

sought the outstanding $1.0 million from Royal, which refused to tender this amount. Signature, with the assistance of security from Travelers, paid the balance to settle the case. Signature then brought this action against Royal seeking declaratory relief and compensation for other damages.

In addition, Signature has obtained an assignment of Travelers' claims against Royal for contribution to the defense costs and attorneys fees, and seeks reimbursement for those fees in this appeal. Royal sought summary judgment, and the district court found that there was no evidence that any of the homes sustained damage during Royal's coverage period and that Royal did not breach its duty to defend and as such granted summary judgment to Royal.

## II. DISCUSSION

### A. Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs. ,165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." Simms, 265 F.3d at 1326. We have jurisdiction under 28 U.S.C. § 1291 and apply Colorado law.

"A federal court sitting in diversity applies the substantive law . . . of the forum state." Barrett v. Tallon, 30 F.3d 1296, 1300 (10th Cir. 1994). "The interpretation of an insurance policy, like any written contract, presents a question of law, and, therefore, is appropriate for summary judgment." Tynan's Nissan, Inc. v. American Hardware Mut. Ins. Co., 917 P.2d 321, 323 (Colo. Ct. App. 1995). Accordingly, we look to Colorado law for guidance on the interpretation of these insurance policies. We may affirm the district court's grant of summary judgment for any reason supported by the record. See Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1255 (10th Cir. 1997).

**B. Royal's Duty to Defend**

Signature contends that Royal breached its duty to defend Signature under the policy by failing to fully discharge its duties under the policy. Specifically, Signature argues that Royal (1) should have contributed to defense costs and (2) because of its breach of its duty to defend, Royal should have been precluded from relying on its coverage defenses. The district court found that Signature

produced no evidence that Royal refused to defend Signature. We shall consider each contention in turn.

    1. Breach of Duty to Defend .

Under Colorado law, "an insurer's duty to defend arises when the underlying complaint against the insurer alleges any facts that might fall within the coverage of the policy." Hecla Mining Co. v. New Hampshire Ins. Co. , 811 P.2d 1083, 1089 (Colo. 1991) (en banc). The duty to defend is separate from and broader than the duty to indemnify. See id. Furthermore, where the insurer's duty to defend is not clear from the pleadings, "but the allegations do state a claim which is potentially or arguably within the policy coverage," the insurer must abide by its duty to defend the claim. Id.

    As to its duty to defend, Royal's policy stated: "We will have the right and duty to defend any 'suit' seeking [those sums that the insured becomes legally obligated to pay as damages]." Rec. vol. III at R01053. The allegations in the Wernli and Long litigations were based on Signature's negligence and breach of warranty, which might be "occurrences" under Royal's policy as defined therein. An "occurrence" could include negligence and breach of warranty. See id. at R01051. The district court concluded that Signature "produced no evidence that

Royal refused to defend it." Rec. vol. I, tab 7, at 7-8 (Dist. Ct. Order filed July 22, 1999).

Signature contends, however, that Royal did not uphold its duty to defend or to participate in settlement proceedings. First, Signature states that Royal had agreed to split defense costs and yet ignored subsequent written demands for those costs. Colorado law recognizes that primary coverage insurers "are duty bound to defend the insured and are required to contribute their pro rata share" to the defense costs. National Cas. Co. v. Great S.W. Fire Ins. Co., 833 P.2d 741, 747-48 (Colo. 1992). Signature, relying in part on Lujan v. Gonzales, 501 P.2d 673, 677 (N.M. Ct. App. 1972), also contends that Royal may not rely on the defense provided by Travelers and may not as a result shirk from its defense costs obligations. See id. (holding that insurer's refusal to defend was breach of its duty to defend, notwithstanding the defense rendered by the other insurer). Finally Signature contends that Royal failed to complete a reasonable and prudent investigation of all aspects of the underlying case, as required by Aetna Cas. & Sur. Co. v. Kornbluth, 471 P.2d 609, 612 (Colo. Ct. App. 1970).

Royal counters Signature's argument by stressing the relevance of its reservation of rights under Colorado law. Royal does not dispute that its duty to defend was triggered and argues that it agreed to defend Signature as to property damages that occurred while Royal was Signature's carrier. In fact, Royal

-9-

acknowledged its duty to defend, but undertook the duty subject to a reservation of rights. See Hecla Mining Co., 811 P.2d at 1089 (stating "[t]he appropriate course of action for an insurer who believes that it is under no obligation to defend, is to provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy").

Royal asserts that it upheld its defense obligation: it "appointed" the law firm of Long & Jaudon, and conducted a thorough and diligent internal investigation as to its duty to indemnify. Royal argues that the record indicates that it was prepared to reimburse Travelers for its defense costs as required under Colorado law. See Rec. vol. 2, tab 11.2 (Depo. of Donalee Pelovsky, Royal claims adjuster supervisor); National Cas. Co., 833 P.2d at 747-48. Royal set up a reserve for the claim and avers it was prepared to contribute its share of defense costs and indemnity payment to the extent Signature's claims fell within the coverage of Royal's policy. Royal contends it paid no bills because Travelers paid defense counsel's bills. Royal received no invoices until they were produced in this litigation.

But we agree with Signature that although Royal pursued the above actions, these actions do not amount to an active independent defense of Signature's claims. We disagree with the district court's conclusion, and hold that Royal

breached its duty to defend by not fully discharging its duty. Rather than discharging its duty to defend, Royal was nonresponsive to settlement overtures, failed to communicate with its insured, and failed to fully cooperate in settlement negotiations. See Kornbluth, 471 P.2d at 612. Although Colorado courts have not specifically addressed the issue, we agree that "[t]he fortuitous existence of another insurer who [wa]s willing to meet its own obligations" did not excuse Royal from discharging its duty to defend. Aetna Cas. & Sur. Co. v. Coronet Ins. Co., 358 N.E.2d 914, 917 (Ill. Ct. App. 1976); see Lujan, 501 P.2d at 677. Finally, the district court's determination of noncoverage as to Royal's policy might have been a defense to the claims in the underlying action, but the district court's noncoverage ruling did not excuse Royal from fully defending the claims in the first instance.

## 2. Damages from Royal's Breach of its Duty to Defend

Having determined that Royal breached its duty to defend, we turn now to what damages Signature has incurred. As determined above, the presence of another insurer will not protect Royal from breach of its duty to defend. Again we are faced with a issue that Colorado courts have not squarely addressed. Royal reminds us that Signature received a competent defense and it voluntarily entered an apparently favorable and reasonable settlement agreement. See, e.g., Employers' Fire Ins. Co. v. Western Guar. Fund Servs., 924 P.2d 1107, 1113

(Colo. Ct. App. 1996) (holding where insureds "were not undefended," alternate insurer's "refusal to defend . . . caused the [insureds] no harm"). Signature's acceptance of a portion of Travelers' right to attorneys' fees from Royal is not evidence of damages flowing from Royal's breach. When Signature accepted the assignment, it had already received the reservation of rights, and was aware that Royal might be entitled to reimbursement had Royal paid any fees.

However, to hold that Royal is insulated from contributing any defense costs because Royal notified Signature of its reservation of rights to seek reimbursement should we determine that the events were covered by Royal's policy would amount to permitting the insurer to do indirectly what it cannot do directly. See National Cas. Co., 833 P.2d at 747 (stating that to find insurer not responsible for contribution "would be to reward insurer for refusing to honor its contractual obligations by failing to defend a lawsuit brought against the insured that falls within the terms of the policy"). Hecla Mining Co. demands that an insurer notify the insured of its reservation of rights *and* requires the insurer to "provide a defense." 811 P.2d at 1089; see also State v. Pacific Indem. Co., 63 Cal. App. 4th 1535, 1546-47 (1998) ("The insurer must preserve its right to seek reimbursement *by undertaking the defense* of its insured upon an express reservation of rights, a reservation the insurer may unilaterally impose.") (emphasis added).

Signature had a contract right to have actions against it defended by Royal, at Royal's expense, subject to Royal's reservation of its rights. A reservation of rights agreement serves to "furnish temporary protection to an insured, even though [as in this case] it may turn out that the insured was not entitled to such protection." 14 Couch on Ins. § 202:38. We have held Royal in breach of that contractual duty because Royal offered little or no protection to its insured. Further, Royal did not seek a declaratory judgment as to its duty after the underlying litigation was resolved. See Hecla Mining Co., 811 P.2d at 1089 ("The appropriate course of action for an insurer who believes that it is under no obligation to defend, is to provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or to file a declaratory judgment action after the underlying case has been adjudicated."). We cannot allow Royal to benefit from its breach, for to do so compels the insured to bear the expense of the litigation, and Signature is actually no better off financially that if it never had the contract right of a defense from Royal. See National Cas. Co., 833 P.2d at 747; cf. Willis Corroon Corp. v. The Home Ins. Co., 203 F.3d 449, 453 (7th Cir. 2000) (en banc) (holding that, under Illinois law, where insurer "mishandled a defense which it undertook under a reservation of rights" and "left [insured] in the lurch" to allow insurer to "blatant[ly] manipulat[e] the law" and

file a "twelfth-hour" declaratory judgment action would "encourage the worst possible behavior."). A natural and proximate result of Royal's breach was the participation by Traveler's as the only insurer in the continued litigation and settlement proceedings. Traveler's subsequently assigned its rights to seek contribution from Royal to Signature. We hold that Signature is therefore entitled to receive from Royal a pro rata portion of attorney fees, costs and expenses incurred in reaching settlement in the underlying litigation. See National Cas. Co., 833 P.2d at 747-48.

### 3. Royal's Right to Raise Coverage Defenses

Signature contends that because Royal failed to adequately defend under a reservation of rights, Royal is estopped from challenging coverage under the policy. Colorado subscribes to the majority view that an "insurer who believes that it is under no obligation to defend" must provide a defense if the allegations in the underlying complaint might fall within coverage of the policy. Hecla Mining Co., 811 P.2d at 1089.

As discussed above, an insurer "may provide a defense subject to a reservation of rights to seek reimbursement should the facts at trial provide that the incident resulting in liability was not covered by the policy." Id.; see Employers' Fire Ins. Co., 924 P.2d at 1113 (stating that insurer's "letter was

-14-

sufficient to reserve insurer's right to contest insured's claim for payment of defense costs"). The duty to defend continues until the "insurer can establish that the allegations in the complaint are solely and entirely within the exclusion in the insurance policy." Hecla Mining Co. , 811 P.2d at 1090. An insurer is not excused from its duty to defend unless there is "no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." Id. at 1090.

Although Colorado courts have stressed the distinction between the duty to defend and the duty to indemnify, they have not specifically addressed whether an insurer who breaches its duty to defend is consequently estopped from challenging the duty to indemnify. Signature contends that we should follow the minority view, and hold that Royal is estopped from challenging coverage See, e.g., Underwriters at Lloyds v. Denali Seafoods , 927 F.2d 459, 462-65 (9th Cir. 1991) (applying Washington law and holding that insurer who breaches duty to defend cannot contest coverage); St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co., 919 F.2d 235, 240 (4th Cir. 1990) (same, applying North Carolina law); Flannery v. Allstate Ins. Co. , 49 F. Supp.2d 1223, 1227 (D. Colo. 1999) (considering majority and minority viewpoints as to ability of an insurer to contest coverage when it has breached duty to defend). Royal argues that we should adopt the majority view that a breach of the duty to defend is a breach of contract separate and apart from the duty to indemnify. See, e.g., Western

-15-

Alliance Ins. Co. v. Northern Ins. Co. of N.Y., 176 F.3d 825, 828 (5th Cir. 1999) (applying Texas law, noting that "[e]ven if an insurer breaches the broad duty to defend, it is not in all respects estopped from challenging the duty to indemnify and the duty to indemnity may turn on the facts in the underlying lawsuit, not the allegations of the complaint").

We consider "state court decisions, decisions of other states, federal decisions, and the general weight and trend of authority" in anticipating how the Colorado Supreme Court will address an issue. Armijo v. Ex Cam, Inc., 843 F.2d 406, 407 (10th Cir. 1988). Colorado has repeatedly recognized the separate and distinct nature of the duties to defend and indemnify. We are inclined to agree with the District Court of Colorado's analysis and conclusion in Flannery, 49 F. Supp.2d at 227, that Colorado will likely join the majority of jurisdictions in holding that an insurer who breaches its duty to defend may contest coverage. This approach is consistent with the doctrinal distinction between the duty to defend and the separate duty to indemnify. See, e.g., Hecla Mining Co., 811 P.2d at 1086; Flannery, 49 F. Supp.2d at 1228-29 (noting that Colorado law suggests that an "insurer does not forfeit its right to contest coverage when it has breached its obligation to defend the insured"); Colorado Farm Bureau Mut. Ins. Co. v. Snowbarger, 934 P.2d 909, 911 (Colo. Ct. App. 1997) ("Moreover, a liability insurer has no duty either to defend or to indemnify if it can establish that the

factual allegations in the underlying complaint that is solely and entirely within the policy's exclusions.") . Thus, when an insurer breaches its duty to defend, the insured is entitled to receive compensation for any prejudice the insured may have suffered as a result of the breach. Hamlin, Inc. v. Hartford Accident & Indem. Co., 86 F.3d 93, 94-95 (7th Cir. 1996) (giving example of prejudice suffered by insured and stating "If the lack of a defender causes the insured to throw in the towel in the suit against it, the insurer may find itself obligated to pay the entire resulting judgment or settlement even if it can prove lack of coverage."); see Denali Seafoods, Inc. , 927 F.2d at 464 (offering instances in which insured might be able to establish prejudice based upon insured's reliance of insurer's defense).

Because we hold that Royal may raise coverage defenses where there exists a duty to defend, we next consider the district court's grant of summary judgment to Royal based upon the absence of evidence that any damages occurred during Royal's policy period.

### C. Royal's Alleged Breach of its Duty of Good Faith and Fair Dealing

As to Royal's coverage obligations, Signature contends that Royal breached its duty of good faith and fair dealing as to settlement proceedings. Signature claims that it produced sufficient evidence to trigger Royal's implied duties of good faith and fair dealing as to settlement proceedings and that Royal breached

these duties. The district court determined that there was no evidence as to what damages flowed from Royal's alleged breaches because Signature failed to present any evidence that any of the subject homes suffered damage during Royal's policy period. Signature contends it produced such evidence, relying primarily on (1) the slow and progressive nature of the damages; (2) the reports from Royal's adjuster that provide evidence of these damages; and (3) Royal's offers of settlement and reserve ratios that serve as admissions of liability.

### 1. Progressive damages

Signature first submits that the progressive and continuous nature of damages to the subject homes is evidence that property damage resulted in "physical injury to the tangible property" under the policy. Rec. vol. 3 at R01060. Signature offers two cases to support progressive damages in the subject homes: Public Serv. Co. of Colo. v. Wallis & Cos., 986 P.2d 924 (Colo. 1999) and American Employers Ins. Co. v. Pinkard Constr., 806 P.2d 954, 955 (Colo. App. 1990). Neither case, however, bolsters Signature's arguments.

In Wallis & Cos., environmental damages necessitating remediation were sustained over a period of several years. The Colorado Supreme Court focused on the allocation formula that should be applied to multiple insurers should a particular insurer be found liable at trial. See 986 P.2d at 935-36. Although

potentially relevant to provide an allocation method should coverage be established, Wallis & Cos. has no application where there is no evidence that the homes covered by Royal sustained damage during the coverage period.

Next, American Employers involved continuous damages to a roof that was insured by multiple carriers. The court noted that "[w]hen actual damages were sustained is difficult to assess in a situation in which, as here, the property damage occurred progressively over a period of time." 806 P.2d at 956. The evidence of damages, "although not immediately apparent . . . shows that progressive and continuous deterioration of the roof infected the integrity of the structure causing actual property damage during the respective policy periods." Id. Although it provides a helpful definition of progressive damages, American Employers presupposes irrefutable evidence of damages during the relevant coverage period: "It is undisputed that corrosion occurred during each policy period." Consequently, "we conclude that there was an 'occurrence' triggering coverage under each policy." Id.

In contrast, we have here only the report of Royal's independent investigator, which does not establish specific damages to any of the homes covered under the Royal policy. Mr. Aiello's report in fact suggested that the damage may have resulted from "poor workmanship" which would be excluded

under the policy.  Rec. vol. II at R00314.  Without more, we cannot determine that there exists genuine issue of material fact as to when the damages occurred.

In its response to Royal's motion for summary judgment, Signature averred that "some of the Royal homes . . . sustained significant damage."  Rec. vol. 2, tab 11 at 6.  Signature provided only one address that sustained approximately $30,000 in damage and required a new floor.  This home was at initially covered by Royal's policy, but Signature provided no evidence that the damage occurred during Royal's policy period.

### 2. Royal's Adjusters' Reports

Signature also relies heavily on the one report and one letter from Royal's adjustment team as admissions of Royal's liability.  Signature cites Mr. Aiello's report for stating that "a majority of [the 51 potentially covered homes] began experiencing soil related problems within the first year."  Rec. vol. 2 at R00314.  As noted above, however, Signature does not address the adjuster's suggestions that the damage may have resulted from poor workmanship or shifting of the structure, which may have been excluded from coverage.  We agree with the district court that even viewed in a light most favorable to Signature, the proffered evidence is not sufficient to create a reasonable factual issue.

### 3. Royal's Settlement Offer and Reserve.

Signature also suggests that Royal's $100,000.00 settlement offer, coupled with Royal's internal estimated exposure of $400,000.00, is an admission of liability. Compromise or settlement offers are not admissions of liability and Signature cites no authority to suggest otherwise. See, e.g., Martin v. Principal Cas. Ins. Co., 8535 P.2d 505 (Colo. Ct. App. 1991), rev'd on other grounds by Budget Rent-A-Car Corp. v. Martin, 855 P.2d 1377 (Colo. 1993); Colo. R. Evid. 308. We are also unwilling to infer that "settlement authority invariably constitutes a final, objective assessment of a claim's worth to which an insurer may be held on penalty of bad faith." Kosierowski v. Allstate Ins. Co., 51 F. Supp.2d 583, 592 (E.D. Pa. 1999). See also Voland v. Farmers Ins. Co., 943 P.2d 808, 812 (Ariz. Ct. App. 1997) (stating that "[c]ontrary to plaintiff's contention, that the carriers considered her claim's 'fair value' to be $30,000 and therefore offered to settle for that amount does not mean they acknowledged that was 'the minimal amount the insurer's own adjuster ha[d] evaluated as being owed to the insured.'"). In fact, even an insurer that has entered into a settlement agreement may be able to recover where the insurer defended pursuant to a reservation of rights. See e.g., Maryland Cas. Co. v. Imperial Contracting Co., 212 Cal. App. 3d 712 (4th Dist. 1989). Similarly, Royal's reserve calculation is merely an amount it set aside to cover potential future liabilities. See, e.g., Black's Law Dictionary 1309 (7th ed. 1999) (defining policy reserve as "[a]n

-21-

insurance company's reserve that represents the difference between net premiums and expected claims for a given year").  We agree with the district court that Signature is unable to establish damages it incurred from Royal's alleged breach of good faith and fair dealing as to its duty to settle.

## III. CONCLUSION

For the reasons stated above we AFFIRM the district court's grant of summary judgment to Royal as to Royal's duty to indemnify; we REMAND to the district court to calculate Royal's contribution as to attorneys' fees and costs of defense.