**Arthur P. ARCEMENT, Plaintiff-Appellant,**

v.

**NORMAN INDUSTRIES, INC., et al., Defendants,**

St. Paul Fire & Marine Insurance Co., American Home Assurance Co., and Certain Underwriters at Lloyd's, Defendants-Appellees.

No. 80-3770
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

June 29, 1981.

Frank E. Lamothe, III, New Orleans, La., for plaintiff-appellant.

Pugh & Boudreaux, Charles J. Boudreaux, Sr., Lafayette, La., for St. Paul.

Courtenay, Forstall & Grace, Thomas J. Grace, New Orleans, La., for Am. Home.

Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, Clarence A. Frost, New Orleans, La., for Certain Underwriters.

Before GEE, RUBIN and RANDALL, Circuit Judges.

PER CURIAM:

Appellant, Arthur Arcement, filed this suit against his employer, Norman Industries, and its various insurers seeking to recover damages for injuries he claimed to have suffered during the course of his employment aboard the Pipeliner 8, formerly called the Kermac III, a vessel owned and operated by Norman Industries. Arcement's suit against Norman Industries was derailed by a stay order entered in the course of the company's bankruptcy proceedings. The district court granted summary judgment in favor of three of the four insurance companies named as defendants in the suit on the grounds that none of their policies covered Arcement's injuries. The district court later certified these judgments as final pursuant to Fed.R.Civ.P. 54(b). From these judgments Arcement appeals. With respect to all three insurers, Arcement contends on appeal that ambigui-

ties in the language of policies issued by these companies to Norman Industries render summary judgment, on grounds of noncoverage, erroneous. We have reviewed these contentions and concluded that the district court did not err.

■ There is no dispute here over the law applicable to this case. It is well established, as all parties concede, that ambiguities in the language of an insurance policy are to be resolved against the insurer as author of the policy. *Calcasieu-Marine National Bank v. American Employers' Insurance Co.*, 533 F.2d 290 (5th Cir.), *cert. denied*, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976). We have also observed, however, that "courts ought not to strain to find such ambiguities, if, in so doing, they defeat probable intentions of the parties . . . even when the result is an apparently harsh consequence to the insured." *Id.* at 296. To find ambiguities in the insurance policies involved in this case would require a contorted reading of their terms.

■ St. Paul Fire and Marine Insurance Co. issued an excess general liability insurance policy to Norman Industries on July 31, 1977. The schedule of vessels covered by the policy included the vessel known, at that time, as the "Kermac III." St. Paul argues that this policy provided only excess coverage, *i. e.*, it indemnified Norman Industries from liability in excess of that covered by certain underlying insurance policies. Since Arcement's claim was not in excess of $1,000,000, the sum over and above which the excess policy applied, St. Paul contends that Arcement had no claim to recover under this policy.

Arcement, although acknowledging that the policy was primarily designed to provide excess coverage, argues that it is ambiguous in two respects. First, Arcement argues that since Norman Industries failed to maintain the underlying insurance required by the policy, St. Paul is liable under § I(c)(i) of its policy which states the scope of coverage of the policy and provides indemnity for "[a]ll other sums which the assured [Norman Industries] shall become

legally liable to pay ...." Another provision of the policy clearly forecloses any such reading of § I(c)(i). Among the conditions of Norman's coverage under the policy is a requirement that Norman maintain the underlying insurance in force. Although the policy provides that failure to do so will not prejudice the company's rights under the policy, the policy explicitly provides that in the event of such an inadvertent lapse in the underlying coverage the underwriters are "to be liable only to the same extent as they would have been had the assured complied with said condition." Thus, Arcement's argument that Norman's failure to maintain the underlying insurance coverage extends St. Paul's liability under the policy is clearly foreclosed by the terms of the policy and the policy cannot be said to be ambiguous as to the consequences of such a failure.

Arcement also urges that § II(b) of the St. Paul Policy may provide coverage for his claim. That section provides that St. Paul's policy will provide coverage for the amount of claims in excess of $50,000 in the event of occurrences not covered by the "underlying insurance." This section plainly refers to risks or events not anticipated or specified by the underlying insurance policies, not to a situation in which there is an absence of underlying coverage.

The second insurance company defendant, American Home Assurance, issued two insurance policies covering Norman Industries. Arcement contends that both of these policies contain ambiguous language which might be construed to cover his injury. One of these policies was written to cover construction risks involved in the conversion of the Kermac III from an oil well tender vessel to a pipelaying ship, the Pipeliner 8. This policy insured Norman Industries, inter alia, for liabilities arising out of "bodily injury to ... any person (other than an employee of an assured under this policy)." Although Arcement acknowledges that, as an employee of Norman, his claim is explicitly excluded from coverage under the policy by this language, he contends that a different section in the policy contradicts this provision and thus, makes the policy ambiguous. Arcement would have us find the policy ambiguous because a later provision provides coverage for "any sum or sums for which the assured may become liable ... from causes not herein before specified ...." This clause creates no ambiguity in so far as the question whether Arcement's injury is covered by the policy is concerned. This proviso is unambiguously intended to provide coverage for liabilities not specifically mentioned in the text of the policy. It cannot be fairly read to mean that risks and liabilities specifically excluded by other provisions are in fact to be covered.

The other policy issued to Norman Industries by American Home was written to provide insurance coverage for vessels chartered by Norman. Arcement argues that since no list of particular vessels is attached to this policy, it cannot be said that there is no disputed question of material fact regarding Pipeliner 8's coverage by this policy. This argument is frivolous. Arcement alleged in his complaint that the Pipeliner 8 was owned and operated by Norman; at no point in the proceedings in the district court did Arcement allege that this vessel was under charter to Norman. There is nothing in the record to support such an assertion. Thus there can be no ambiguity with regard to the noncoverage of the Pipeliner 8 under this policy.

Finally, Arcement argues that the Pipeliner 8 was covered under two employers' liability policies issued by Certain Underwriters at Lloyd's. These policies were issued on August 16, 1977; they were explicitly limited to liability for claims arising out of the operation of vessels listed on a schedule affixed to the policies. The Pipeliner 8 was not originally on this schedule of covered vessels, but was added, by specific endorsement, in May, 1978. Both endorsements explicitly state that the Pipeliner 8 is to be covered "from 19th May, 1978 E.S.T. inclusive until expiry of policy." Arcement argues that there is an ambiguity as to the period in which the Pipeliner 8 was covered by these policies because at the top of the endorsements was a reference to the terms

**398**

of the original policies reading "12 months at 31st July, 1977," which could be understood to provide coverage to the Pipeliner 8 as of July 31, 1977. This phrase was unambiguously intended only as a description and identification of the policy to which the endorsement referred. It cannot reasonably be read to contradict the plain language of the endorsement which provided coverage for the Pipeliner 8 only as of May 19, 1978. As Arcement was injured in October, 1977, he cannot recover under these policies.

Arcement would have us find ambiguity in the fact that the endorsements call for different additional premiums; however, the two original policies also had different initial premiums and provide different types of coverage. There is nothing peculiar about the difference in premiums paid for the endorsements.

Finally, Arcement argues that the Lloyds' policies are ambiguous because the St. Paul policy lists them as providing underlying insurance. Any agreement between Norman Industries and St. Paul, however, does not render ambiguous the clear language of the Norman-Certain Underwriters contract.

Arcement may have been injured on an improperly insured vessel. However, his assertions of ambiguity in the St. Paul, American Home, and Certain Underwriters policies are meritless, as each policy clearly excludes coverage for his claim. Summary judgment in each instance was appropriate.

The judgment of the district court is AFFIRMED.