**UNIGARD MUTUAL INSURANCE COMPANY, Plaintiff–Appellee and Cross–Appellant,**

v.

**MISSION INSURANCE COMPANY, Defendant–Appellant and Cross Appellee.**

No. 93CA0643.

Colorado Court of Appeals, Div. II.

Sept. 22, 1994.

As Modified on Denial of Rehearing Nov. 10, 1994.

Certiorari Denied June 5, 1995.

Pryor, Carney & Johnson, P.C., John L. Wheeler, Englewood, for plaintiff-appellee and cross-appellant.

Samuel G. Livingston, Denver, for defendant-appellant and cross-appellee.

Opinion by Judge CRISWELL.

In this declaratory action, both the plaintiff, Unigard Mutual Insurance Co. (Unigard), and the defendant, Mission Insurance Co. (Mission), appeal from the judgments dismissing certain claims that each party had asserted against the other. We affirm.

Both Unigard and Mission issued liability insurance policies to the same insured, Pop Shoppes of America, Inc. (Pop Shoppes).

The Unigard policy was a primary general liability policy with a $500,000 limit. Under its terms, both Pop Shoppes and "its division, subsidiary or affiliated companies" were designated as insureds. Likewise, any person using any automobile "owned, hired, or borrowed" by any named insured was also considered to be an insured under that policy. However, no person using an automobile which had been hired or borrowed from an employee or from any member of an employee's household was covered by the terms of the Unigard policy.

This policy provided for payment of damages for personal injury for which any insured became liable. It also had a typical subrogation provision, which authorized Unigard, upon payment of a claim against an insured, to assert any right of recovery that that insured had against any other party.

The Mission policy was not a primary liability policy; it was, rather, an umbrella, "excess" liability policy with a general limit of $5 million. Under this policy both Pop Shoppes, "its subsidiaries ... and employees of [the named insureds] acting within the scope of their duties as such," were each considered to be an "Assured." Further, it provided that, if an employee of one of Pop Shoppes' subsidiaries made a claim against another subsidiary, "then this policy shall cover such Assured against whom a claim is made or may be made in the same manner as if *separate policies* had been issued to each Assured hereunder." (emphasis supplied)

This policy specifically designated the Unigard policy as one of the "underlying insurances." In addition, it provided that Pop Shoppes would establish a "self-insured retention" of $10,000. The policy then provided that Mission would be liable for that portion of any insured's "ultimate net loss" that exceeded either:

(a) The limits of the underlying insurance ... in respect to each *occurrence* covered by such underlying insurances, *or*

(b) The amount set out as [the self-insured retention] in respect to each *occurrence not* covered by said underlying insurances.... (emphasis supplied)

The subrogation provision of the Mission policy recognized that, because that policy provided only excess coverage, "the Assured's right of recovery against any person or other entity" could not be exclusively subrogated to Mission. However, with respect to such right of recovery, it was agreed that it and any other insurer would act in concert to exercise "such rights of recovery" and that any apportionment of proceeds from any subrogated recovery would be based upon the principle that Mission would be entitled to be reimbursed for any payment made by it before any underlying insurances would be reimbursed.

While these two policies were in effect, a sales and promotional meeting was held in

Denver for employees of several of Pop Shoppes' subsidiaries. McKinley, an employee of one of the subsidiaries, Western Pop Shoppes (Western), was instructed by his supervisors to provide transportation services for out-of-town employees. In the course of returning one of the other subsidiary's employees to her hotel, and while he was allegedly under the influence of alcohol, McKinley was involved in a one-vehicle collision, which resulted in serious and permanent injuries to his passenger.

The vehicle involved in this collision was leased to McKinley from a third party, and McKinley had obtained a personal liability insurance policy with a limit of $100,000 protecting him while he was operating this vehicle. Neither Pop Shoppes nor any of its subsidiaries had leased or borrowed this vehicle from McKinley. However, McKinley was reimbursed at a mileage rate for use of this vehicle while in the service of Western.

After the accident, the injured employee sued both McKinley and Western in the federal district court, asserting that, at the time of the accident, McKinley was acting within the course and scope of his employment with Western and that it was McKinley's negligence that was the cause of her personal injuries. Western appeared by counsel employed by Unigard and denied that McKinley was acting in the course and scope of his employment. And, by cross-claim against McKinley, Western sought indemnification from him should it be determined that it was liable to the plaintiff for her injuries.

None of the issues presented by the parties' pleadings in this underlying litigation was adjudicated. Rather, Unigard and Mission, together with McKinley's private insurer, entered into a settlement agreement with the injured employee as a result of which the employee's claims against both McKinley and Western were dismissed, with prejudice, and the employee was paid a total of $980,000. Of that amount, McKinley's private insurer paid its policy's limit of $100,000, and that insurer was not made a party to this litigation and has no interest in the issues presented here. Unigard contributed $280,700 to the settlement, and Mission contributed $599,300.

At the time of this settlement, there was a disagreement between Unigard and Mission as to the amount that each of them was legally obligated to contribute. Consequently, these two parties agreed that their contributions would be made with the full reservation by each of their respective rights to obtain a later judicial determination of that issue.

No written agreement between Unigard and Mission reflecting this understanding appears in this record. Moreover, nothing in the record affirmatively discloses on whose behalf (either Western, or McKinley, or both) Mission made its contribution to the settlement. The parties agree, however, that the cross-claim for indemnification asserted by Western against McKinley in that litigation was dismissed, without prejudice, as a result of the settlement of the plaintiff's claims.

Thereafter, Unigard commenced the instant litigation against Mission for a declaration of the parties' respective rights. In doing so, it asserted that McKinley was not covered under its primary policy (because he was not using a vehicle covered by that policy), but that he was covered under the Mission excess policy, so that Mission was required to pay all sums for which McKinley was responsible, less only the $10,000 self-retention sum established by the Mission policy. Relying on the indemnification concept recognized in *Hamm v. Thompson,* 143 Colo. 298, 353 P.2d 73 (1960) (employer, liable to third party under doctrine of respondeat superior, is entitled to indemnification from negligent employee), Unigard, as Western's subrogee, sought to obtain indemnification from Mission, as McKinley's insurer, for any amounts that Western had been required to pay to the injured employee as a result of McKinley's negligence.

Mission also asserted a subrogated claim against Unigard. It asserted that, because Unigard was primarily liable to pay the first $500,000 of Western's liability, Mission, as the excess insurer, was liable to pay only any excess above that amount. Because Unigard had contributed only $280,700 to the settlement, Mission asserted that it was entitled to

be paid the difference of $219,300, and it sought a judicial declaration to that effect.

The parties each moved for summary judgment upon these two claims, based on the facts summarized above. The trial court agreed with Unigard that McKinley was not an insured under its policy, but that he was an insured under the Mission policy. However, because the claim asserted by Unigard was a subrogated claim for indemnification against McKinley, as a joint tortfeasor with Western, that court concluded that such a claim was barred by § 13–50.5–105(1)(b), C.R.S. (1987 Repl.Vol. 6A) and our supreme court's decision in *Brochner v. Western Insurance Co.*, 724 P.2d 1293 (Colo.1986).

With respect to Mission's claim, the trial court concluded that the excess coverage policy issued by Mission covered McKinley, as an insured under that policy, for all liability above the self-retention amount of $10,000. It also concluded that Mission's claim was similar to Unigard's in that Mission was asserting a subrogated claim, as McKinley's subrogee, against Unigard, as Western's insurer, for indemnification and that that claim was also barred by the same statute and court decision.

Accordingly, the trial court entered summary judgment dismissing both parties' subrogated claims and certified such dismissals as final judgments under C.R.C.P. 54(b).

## I. Unigard's Claim

■ Unigard does not dispute the manner in which the trial court characterized its claim against Mission. It agrees that, as Western's subrogee, it seeks indemnification from Mission, as McKinley's liability insurer, because McKinley's negligence was the primary cause of the employee's injuries, while Western was only secondarily liable as a result of the application of the doctrine of respondeat superior. *See Hamm v. Thompson, supra; Otis Elevator Co. v. Maryland Casualty Co.*, 95 Colo. 99, 33 P.2d 974 (1934). It asserts, therefore, that this indemnification claim is not barred under the circumstances disclosed here. We disagree.

Section 13–50.5–105(1), C.R.S. (1987 Repl. Vol. 6A) provides that, if one of two or more

joint tortfeasors is given a release or covenant not to sue with reference to the injury for which such tortfeasors are collectively liable, that release or covenant will serve to reduce the total recovery by the plaintiff against the remaining tortfeasors by the percentage that the settling tortfeasor is determined to be liable to that plaintiff. In addition, such release or covenant will also discharge such settling joint tortfeasor "from all liability for contribution" to the other tortfeasors.

In *Brochner v. Western Insurance Co., supra*, our supreme court determined that, while this statute addressed only the doctrine of contribution and not the concept of indemnification, its legal effect, operating in conjunction with §§ 13–50.5–102(2) and 13–50.5–103, C.R.S. (1987 Repl.Vol. 6A) (right of contribution based on relative degrees of fault), and the later statute abolishing joint and several liability among joint tortfeasors, § 13–21–111.5, C.R.S. (1987 Repl.Vol. 6A), was to establish a policy of proportionate fault. Given this policy, therefore, the doctrine of indemnification between certain joint tortfeasors, which the Colorado judiciary had previously recognized, could no longer be applied. In *Brochner*, therefore, none of the alleged joint tortfeasors, all of whom were alleged to have been actively negligent and all of whom entered into the settlement agreement with plaintiff, could assert an indemnification claim against any other.

*Brochner's* declaration of the abolition of the doctrine of indemnity contained one caveat. That opinion specifically noted that the question whether indemnity could still be obtained in those situations in which "the party seeking indemnity is vicariously liable or is without fault is not presented by the circumstances of this case." *Brochner v. Western Insurance Co., supra*, 724 P.2d at 1298.

Unigard recognizes that, on its face, the claim for indemnity being asserted by it would be barred by the *Brochner* decision. It argues, however, that there are two reasons for its inapplicability here.

■ First, it argues that, because McKinley did not raise this issue by means of an

affirmative defense to Western's cross-claim in the previous litigation, Mission cannot raise that issue here. We disagree.

McKinley's answer to the previous cross-claim consisted only of a general denial. However, there was no adjudication of that claim in the previous litigation, and that claim was not compromised or settled at the time the injured employee's claims were dismissed with prejudice. Rather, the two parties here agreed that each was fully reserving its respective rights.

Hence, even if we assume, without deciding, that the question of the legal right to indemnity is one that must be raised as an affirmative defense to such a claim, the dismissal of the cross-claim in the previous litigation did not constitute any determination of the merits of that claim because no final judgment with respect to that claim was entered. *See Pomeroy v. Waitkus,* 183 Colo. 344, 517 P.2d 396 (1973).

Nor could such dismissal without prejudice prevent the presentation of additional defenses were that claim to be reasserted in some later proceeding. Unigard concedes that it is unaware of any court decision that prevents a litigant from asserting additional defenses against a claim, previously dismissed without prejudice, when that claim is re-asserted in later and different proceedings. And, we decline to adopt such a rule. *See Barlow v. Hoffman,* 103 Colo. 286, 86 P.2d 239 (1938) (stating, in dictum, that dismissal without prejudice does not deprive defendant of any defense he might have in new suit).

Finally, nothing within this record would support any assertion that Mission has voluntarily waived or abandoned its right to assert that no claim for indemnification against McKinley can be maintained. On the contrary, it is undisputed that both Unigard and Mission agreed that each was to reserve all of its rights to litigate their respective obligations.

Second, Unigard argues that, because Western was rendered liable to the injured employee solely by reason of the application of the doctrine of respondeat superior, the *Brochner* opinion is inapplicable to the claim for indemnity being asserted by it. However-

er, the record here does not support Unigard's basic premise that Western was not itself independently negligent.

Before the trial court, Unigard entered into the following written stipulation:

> In the context of Unigard's subrogation claim for indemnity against Mission Insurance Company, and without affecting the issue of whether a claim of direct negligence was asserted against [Western] in the underlying liability case ... Unigard stipulates that its insured [Western] was negligent to some degree and accordingly is a joint tortfeasor with Lloyd McKinley regarding the automobile accident....

Under this stipulation, therefore, Western, being itself negligent, was a joint tortfeasor in the same status as were the joint tortfeasors in *Brochner.* Indeed, the record suggests that this stipulation was entered into to remove the question of the applicability of *Brochner's* caveat as an issue in this case, and the trial court interpreted this stipulation in that manner.

Unigard argues, however, that such stipulation was executed by it only for the purpose of its argument that Mission could not raise the *Brochner* issue in this litigation. However, neither the specific language of the stipulation nor any other part of the record supports Unigard's contention in this respect. Indeed, the question whether Western was itself negligent is irrelevant to the question whether Mission can raise this issue in this litigation. It is relevant, if at all, only with respect to the substantive validity of Mission's assertion that the indemnification claim cannot be maintained.

We conclude, therefore, that the trial court properly determined, as a matter of law, that Unigard's subrogated claim for indemnity cannot be maintained under *Brochner.* Hence, the trial court's judgment dismissing that claim must be affirmed on that basis, and we need not consider the other defenses raised by Mission with respect to this claim.

## II. *Mission's Claim*

■ Mission argues on its appeal that the trial court mischaracterized the claim being asserted by it against Unigard and that,

properly characterized, that claim cannot be dismissed on the grounds adopted by the trial court. While we agree that the trial court erred in its characterization of the Mission claim, we nevertheless conclude that its judgment dismissing this claim must be affirmed.

In asserting its claim against Unigard, Mission did not contend that Unigard was liable to it because of some claimed right of indemnification between joint tortfeasors. On the contrary, Mission's right, as an excess insurer of Western, to obtain full payment of Unigard's obligations under its primary policy, if such right exists at all, would exist independently of any liability that might be found to exist between McKinley and any other party. Rather, the claim asserted by Mission here is a *contract* claim, based on the terms of the Unigard policy, that otherwise could have been enforced by Western, the parties' mutual insured. *See Cingoranelli v. St. Paul Fire & Marine Insurance Co.,* 658 P.2d 863, 865 (Colo.1983) (release of tortfeasor does not affect claims against PIP carrier because PIP claims "are contractual claims which exist independently of tort liability").

With respect to this claim, it is generally recognized that:

> Where an excess insurer makes payment of the judgment against the insured, it is entitled to recover the amount thereof from the primary insurer, if the latter has not already paid up to the maximum of its policy.

16 R.A. Anderson, *Couch on Insurance 2d* § 62:53 at 499 (rev. ed. 1983).

This result is sometimes justified on the basis that the excess insurer succeeds, under the excess policy's subrogation provisions, to the insured's contract rights under the primary policy. *See Millers Casualty Insurance Co. v. Briggs,* 100 Wash.2d 9, 665 P.2d 887 (1983); *State Farm Mutual Automobile Insurance Co. v. Foundation Reserve Insurance Co.,* 78 N.M. 359, 431 P.2d 737 (1967). On other occasions, it has been said that equity will create a subrogation right in the excess insurer because of that insurer's payment of an obligation that equitably should have been paid by the primary insurer. *See F.B. Washburn Candy Corp. v. Fireman's Fund,* 373 Pa.Super. 479, 541 A.2d 771 (1988) (doctrine of equitable subrogation allows excess insurer to recover defense costs if primary insurer refuses to defend).

Under either analysis, however, the excess insurer is entitled to recover from the primary insurer the amount paid by it which, under the primary policy, should have been paid by the primary insurer; its right of recovery does not rest upon a claim for indemnification from a joint tortfeasor.

■ Unigard does not dispute this principle. It argues, however, that, because Mission was a primary insurer of McKinley (above the $10,000 self-insured retention level of its policy), the contribution made by it to the settlement was required to be made on McKinley's behalf, and it cannot, therefore, obtain any indemnification from Unigard for such payment. We agree.

■ Mission concedes that McKinley was an "Assured" under its policy. It notes, however, that its policy renders it primarily liable for amounts above $10,000 only if the "occurrence" leading to the loss is "not covered by [the] underlying insurances." Emphasizing that its policy defines an "occurrence" as "an accident or happening or event," it asserts that, because the accident here was "covered" by the Unigard policy, insofar as *Western's* liability was concerned, it was an "occurrence" covered by the underlying policy even though that policy did not provide coverage for *McKinley.* We reject this interpretation of the Mission policy.

We agree with Mission that the purpose of the provision in question is to provide for risks not insured against by the underlying insurances; its purpose is not to provide primary coverage if the insured has allowed the underlying policy to lapse. *Arcement v. Norman Industries, Inc.,* 652 F.2d 395, 397 (5th Cir.1981) (such a provision "plainly refers to risks or events not anticipated or specified by the underlying insurance policies, not to a situation in which there is an absence of underlying coverage").

Here, however, there was no absence of any underlying insurance. The Unigard policy simply excluded certain risks from its

coverage, one of which was an accident by an employee while driving a vehicle not owned or hired by Western from a third party.

Further, the fact that the accident here was an "occurrence" under the Unigard policy with respect to the coverage for Western is irrelevant. The Mission policy expressly provides that, in the circumstances present here, that policy is to be treated as if separate policies had been issued to each "Assured," of which McKinley was one. Under such a provision, the coverage provided to each insured is to be determined without considering the coverage provided to any other insured; the policy must be construed as if McKinley were the sole insured. *See Harris v. Employers Mutual Casualty Co.,* 33 Colo.App. 314, 519 P.2d 1227 (1974).

Thus construed, if the accident was not "covered" by the Unigard policy, insofar as McKinley's liability was implicated by that accident, it was not an "occurrence" covered by that policy under the terms of the Mission policy. And, we conclude that McKinley was not insured under the Unigard policy with respect to the accident in which he was involved.

An employee of Pop Shoppes and its subsidiaries is an insured under the Unigard policy only while using an automobile that any of those insureds "own[s], hire[s] or borrow[s]." However, if the vehicle is hired or borrowed from an employee or from any member of that employee's household, the person using such a vehicle is not insured under the Unigard policy during the time of such use.

Western did not "own" the vehicle in question, and it did not literally "hire or borrow" it. However, even if it is assumed that Western's payment of a mileage rate to McKinley for the use of that vehicle constituted a hiring of it, *see Richardson v. Ludwig,* 495 N.W.2d 869 (Minn.App.1993), that hiring would have been from McKinley, an employee. Hence, the use of that vehicle under such circumstance would still not have been covered by the Unigard policy insofar as McKinley was concerned.

Nor do we consider the insuring provisions of the liability coverage of the Unigard policy to be rendered ambiguous by that policy's use of the term, "family member," in its uninsured motorist provisions. However that term may be interpreted in any specific instance, *see Hawkeye–Security Insurance Co. v. Lambrecht & Sons, Inc.,* 852 P.2d 1317 (Colo.App.1993), its application is limited to the uninsured motorist coverage and is, therefore, irrelevant upon the issue presented here.

Hence, we conclude that the trial court correctly determined that McKinley was not an insured under the Unigard policy, that he was an insured under the Mission policy, and that, because his accident was not covered by the Unigard policy with reference to his liability, Mission was liable to pay all sums that McKinley was legally responsible for paying in excess of the self-retention sum of $10,000.

Further, the settlement agreement with the plaintiff in the previous litigation did not purport to apportion liability between McKinley and Mission. Because the accident here occurred before the adoption of § 13–21–111.5(1), *see* Colo.Sess.Laws 1986, ch. 108 at 680, both McKinley and Western were jointly and severally liable to the plaintiff. Hence, Mission was required under its policy to pay, on McKinley's behalf, the sums which it seeks to obtain from Unigard, as Western's primary insurer. However, because of its status as McKinley's primary insurer, its status as Western's excess insurer does not provide to it any right of indemnification under the circumstances.

Judgment affirmed.

MARQUEZ and TAUBMAN, JJ., concur.