The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
April 5, 2018

## 2018COA49

**No. 17CA405,** *Preferred Professional Insurance Company v. The Doctors Company* **— Insurance — Subrogation — Excess Insurer**

A division of the court of appeals concludes that an excess insurer seeking recovery under equitable subrogation for a primary insurer's failure to settle a case against their mutual insured "steps in the shoes of the insured" and must plead and prove the primary insurer's bad faith.

Court of Appeals No. 17CA0405
City and County of Denver District Court No. 15CV31295
Honorable Elizabeth A. Starrs, Judge

_____

Preferred Professional Insurance Company,

Plaintiff-Appellee,

v.

The Doctors Company,

Defendant-Appellant.

_____

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE DAVIDSON*
J. Jones and Richman, JJ., concur

Announced April 5, 2018

_____

Sweetbaum Sands Anderson, P.C., Jon F. Sands, Marilyn S. Chappell, Denver, Colorado, for Plaintiff-Appellee

Taylor Anderson, LLP, Kyle P. Seedorf, John M. Roche, Lauren E. Rhinehart, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1     Suppose that an injured party sues a person who has both primary and excess insurance covering the claim. The injured party offers to settle for an amount within the primary coverage limit. The primary insurer exercises its contractual, discretionary right not to accept the settlement. But the excess insurer, perhaps spooked by the prospect of a judgment exceeding the primary coverage limit, pays the settlement demanded by the injured party. When the excess insurer sues the primary insurer to recover the amount paid in settlement, claiming that the primary insurer should have accepted the settlement offer, what sort of claim may the excess insurer assert? And must the excess insurer plead and prove that the primary insurer acted in bad faith in declining to settle?

¶ 2     We hold that an excess insurer in this situation must proceed on a theory of equitable subrogation premised on the rights of the insured under his contract with the primary insurer — that is, the excess insurer must step into the shoes of the insured. It follows that, under Colorado law, because the insured would have to prove bad faith in an action against his primary insurer based on the

1

insurer's refusal to settle, the excess insurer must also plead and prove such bad faith.

¶ 3     The facts of this case match those of our hypothetical. Preferred Professional Insurance Company (PPIC) is the excess insurer that paid the settlement. The Doctors Company (TDC) is the primary insurer that declined to settle. But while PPIC purported to bring a claim of equitable subrogation against TDC, it disavowed any intent to proceed on the legal theory that it stands in the insured's shoes. And it did not plead or attempt to show that TDC acted in bad faith. Instead, PPIC's theory is that general equitable principles allow it to recover from TDC apart from any rights of the insured under his contract with TDC, and that it need not plead or prove that TDC acted in bad faith.

¶ 4     The district court accepted PPIC's theory and granted summary judgment in its favor. But we conclude that PPIC's theory of recovery is not viable under Colorado law. So we reverse the summary judgment and remand the case to the district court for entry of judgment in TDC's favor.

## I. Background

¶ 5    The undisputed facts establish that the parties both held separate professional liability policies for the same insured, Dr. Rupinder Singh. A medical malpractice suit was filed against Dr. Singh and other parties.

¶ 6    TDC defended Dr. Singh in the suit as required by its primary liability policy. The policy provided coverage up to a limit of $1 million. TDC's policy required Dr. Singh's consent before accepting any settlement offers, but TDC retained the discretion whether to accept or reject any such offers.

¶ 7    PPIC's insurance policy was an "excess policy," which would cover any losses that exceeded TDC's $1 million coverage up to an additional $1 million. As an excess insurer, PPIC did not have any duty to defend Dr. Singh in the suit.

¶ 8    The plaintiff in the medical malpractice suit offered to settle the case with Dr. Singh for $1 million. Dr. Singh conveyed his desire to accept the settlement offer to both insurers, but TDC declined the plaintiff's offer. PPIC told Dr. Singh he should accept, and it paid the $1 million settlement.

¶ 9      PPIC filed a claim for equitable subrogation, seeking payment of the $1 million from TDC.  Both parties filed summary judgment motions.  In its motion, PPIC argued that the applicable standard for recovery under equitable subrogation is a five-factor test set forth in *Hicks v. Londre*, 125 P.3d 452, 456 (Colo. 2005).  TDC responded that in order to recover under equitable subrogation, PPIC was required to prove that TDC refused to settle in bad faith.  In reply, PPIC argued that its claim for equitable subrogation was "not premised on the assertion that it has stepped into the shoes of its insured, Dr. Singh, through its payment of the settlement," and that it was "not required to establish [bad faith]" to recover, relying exclusively on *Unigard Mutual Insurance Co. v. Mission Insurance Co.*, 907 P.2d 94, 99 (Colo. App. 1994), and *Hicks*.  The district court applied the *Hicks* factors and found in PPIC's favor without addressing TDC's argument concerning the need to show bad faith.

¶ 10     On appeal, TDC contends that the district court erred as a matter of law.  TDC asserts that, under well-established Colorado insurance law, an equitable subrogation claim brought by an excess insurer against the primary insurer to recover the amount paid in settlement can only be derivative ("standing in the shoes") of the

4

insured's rights.  Consequently, TDC argues, PPIC's refusal to plead and present evidence that TDC acted in bad faith in declining to settle, under the circumstances here, requires dismissal of PPIC's claim.  We agree with TDC.

## II.    Standard of Review

¶ 11    We review an appeal of a summary judgment de novo. *Edwards v. Bank of Am., N.A.*, 2016 COA 121, ¶ 13.  Summary judgment is a drastic remedy that should be granted only when the pleadings and the supporting documents demonstrate that no genuine issue of material fact exists and that the moving party is legally entitled to judgment.  *W. Elk Ranch, L.L.C. v. United States*, 65 P.3d 479, 481 (Colo. 2002).  The moving party carries the burden to establish the lack of a genuine issue of fact.  Any doubts in that regard must be resolved against the moving party.  *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008).

¶ 12    An appellate court may "independently review the question of whether the doctrine of equitable subrogation applies to the circumstances."  *Hicks*, 125 P.3d at 455.

## III. Issue Preservation

¶ 13    As a threshold matter, we address and reject PPIC's argument that TDC did not properly preserve this issue in the district court. TDC argued in opposing PPIC's motion for summary judgment that PPIC was pursuing a novel theory of recovery in the primary/excess insurance coverage context that should be rejected, and that the *Hicks* test has never been applied in this setting to allow an excess carrier to usurp the primary insurer's role without a showing that the primary insurer acted in bad faith. TDC cited several bad faith failure to settle cases, including some arising in the insurance context between excess and primary insurers. So, while the words "step into the shoes of the insured" do not appear in TDC's response, we conclude that the district court was alerted to the issue.

## IV. Analysis

¶ 14    From settled Colorado insurance law, we conclude that an excess carrier asserting an equitable subrogation claim against a primary carrier for failing to settle must plead and prove that the primary insurer's settlement decisions were made in bad faith. Without such an allegation, the claim is not legally viable.

6

### A. In the Context of Colorado Insurance Law, the Claim of Equitable Subrogation Is Identified As Derivative of the Rights of the Insured

¶ 15 Subrogation is "a creature of equity having for its purpose the working out of an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity and good conscience ought to pay it." *In re Estate of Boyd*, 972 P.2d 1075, 1077 (Colo. App. 1998) (quoting *United Sec. Ins. Co. v. Sciarrota*, 885 P.2d 273, 277 (Colo. App. 1994)); *see Cedar Lane Invs. v. Am. Roofing Supply of Colo. Springs, Inc.*, 919 P.2d 879, 884 (Colo. App. 1996) (Equitable subrogation arises "because it is imposed by courts to prevent unjust enrichment." (quoting 1 Dan B. Dobbs, *Law of Remedies* § 4.3(4), at 606 (2d ed. 1993))).

¶ 16 In insurance cases, equitable subrogation is often used as a loss-shifting mechanism, dependent on the rights, obligations, and duties between the parties as set forth in the insurance policy. Thus, a subrogated insurer has "no greater rights than the insured, for one cannot acquire by subrogation what another, whose rights he or she claims, did not have." *Am. Family Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 323 (Colo. 2009) (citation omitted); *see Bainbridge, Inc. v. Travelers Cas. Co. of Conn.*, 159 P.3d 748, 751 (Colo. App.

2006) ("[T]here must first exist a valid claim, right, or debt in order for another to become subrogated to it."); *Union Ins. Co. v. RCA Corp.*, 724 P.2d 80, 82 (Colo. App. 1986) ("The claim of a subrogee insurance carrier is derivative of the claim of its subrogor insured. Subrogation merely alters the beneficial ownership of the claim, not its identity, and gives the insuror the right to prosecute against responsible third parties whatever rights its insured possesses against them."), *overruled on other grounds by Mile Hi Concrete, Inc. v. Matz*, 842 P.2d 198, 206 n.17 (Colo. 1992).

¶ 17 In the insurance context, regardless of how an insurer obtains ownership of subrogation rights (viz., under contract with the insured or through principles of equity), they are derivative of the rights of the insured. "Once an insurance company enjoys those rights, [it] 'stand[s] in the shoes of the insured' for all legal purposes and may pursue any rights held by the insured subrogor." *DeWitt*, 218 P.3d at 323; *see Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 834 (Colo. 2004) (by subrogation, a party who discharges another's debt "stands in the shoes" of the subrogor); *United Fire Grp. ex rel. Metamorphosis Salon v. Powers Elec., Inc.*, 240 P.3d 569, 573 (Colo. App. 2010) (same); *Bainbridge*, 159 P.3d

8

at 751; *Wright v. Estate of Valley*, 827 P.2d 579, 582 (Colo. App. 1992); *Union Ins. Co.*, 724 P.2d at 82.

B.   Under Colorado Insurance Law, Any Settlement Obligation Owed by TDC to PPIC Was Defined by TDC's Insurance Policy With Dr. Singh

1.   TDC Only Had a Duty to Dr. Singh to Make Reasonable Settlement Decisions

¶ 18    Under the terms of an insurance policy, a primary insurer, to the exclusion of the insured, may have complete discretion to accept or reject settlement offers. *See Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1141 (Colo. 1984); *Aetna Cas. & Sur. Co. v. Kornbluth*, 28 Colo. App. 194, 199, 471 P.2d 609, 611 (1970). However, in deciding whether to accept a settlement offer, the insurer must give at least as much consideration to the insured's interests as it does to its own. *See Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004).

¶ 19    Because of the special nature of insurance contracts, Colorado courts have extended the duty of good faith and fair dealing implied in every bilateral contract to allow an insured to bring a separate tort action for bad faith refusal to settle. *See id.* at 414-15.

9

¶ 20    Thus, Dr. Singh had a contractual right to bring a tort claim against TDC for breach of the insurance contract for alleged bad faith failure to settle.  In that claim, Dr. Singh would be required to prove that TDC acted in bad faith, or "unreasonably under the circumstances."  *Am. Family Mut. Ins. Co. v. Allen,* 102 P.3d 333, 342 (Colo. 2004) (quoting *Goodson,* 89 P.3d at 415).  Under Dr. Singh's policy, TDC would be liable for any excess damages awarded against Dr. Singh if TDC had unreasonably — that is, in bad faith — refused the $1 million pretrial settlement offer.  *See Lira v. Shelter Ins. Co.,* 903 P.2d 1147, 1149 (Colo. App. 1994), *aff'd,* 913 P.2d 514 (Colo. 1996).

¶ 21    Conversely, Dr. Singh could not recover against TDC for any liability he suffered if TDC's settlement decisions were shown to have been objectively reasonable.  *See, e.g., Hazelrigg v. Am. Fid. & Cas. Co.,* 228 F.2d 953, 956 (10th Cir. 1955) (A primary insurer does not guarantee that its decision as to settlement will end advantageously, but it owes to its insured "the duty to exercise an honest discretion at the risk of liability beyond its policy limits.").  Premising liability on an insurer's negligence for failure to settle reasonably reflects "the quasi-fiduciary relationship that exists

10

between the insurer and the insured by virtue of the insurance contract," *Trimble*, 691 P.2d at 1141, which "necessarily imposes a correlative duty on the part of the insurance company to ascertain all facts" in making a decision to settle. *Kornbluth*, 28 Colo. App. at 199, 471 P.2d at 611.

> 2. Numerous Other Jurisdictions Allow an Excess Insurer to "Stand in the Shoes of the Insured" to Seek Recovery From the Primary Insurer for Bad Faith Breach of the Duty to Settle Owed to the Insured

¶ 22    As the excess carrier, PPIC assumed Dr. Singh's risk of a judgment that exceeded the limits of his policy with TDC. PPIC and Dr. Singh contracted for the possibility of this exposure, but PPIC had no contractual relationship with TDC and, in that regard, no control over TDC's settlement decisions. However, unlike Dr. Singh, PPIC did not have a contract or tort claim against TDC for any bad faith failure to accept the $1 million settlement offer.

¶ 23    Other jurisdictions, concerned that excess insurers were facing ever-increasing risks of excess verdict amounts without recourse against primary insurers, created a remedy for excess insurers through derivative equitable subrogation. They reasoned that the excess insurer is effectively the insured for the purpose of

11

any judgment exceeding primary policy limits and, therefore, it should be protected at least to the same extent that the insured is protected by the contractual obligations owed to it by its primary insurer. *See, e.g., Twin City Fire Ins. Co. v. Country Mut. Ins. Co.*, 23 F.3d 1175, 1178 (7th Cir. 1994) (citing cases; the duty that a primary insurer owes an excess insurer is derivative of the primary insurer's duty to the insured); *Great Sw. Fire Ins. Co. v. CNA Ins. Companies*, 547 So. 2d 1339, 1348 (La. Ct. App. 1989) ("[T]he excess insurer . . . stands in the shoes of the insured and should be permitted to assert all claims against the primary insurer which the insured himself could have asserted.").

¶ 24 As one commentator has explained, regardless of the fact there is no contractual relationship between them, "the primary insurer should be held responsible to the excess for improper failure to settle, since the position of the latter is analogous to that of the insured when only one insurer is involved." Robert E. Keeton, *Insurance Law* § 7.8(d) (1971).

¶ 25 Thus, an overwhelming number of courts allow an excess insurer to be equitably subrogated to the insured's right to seek relief against the primary insurer for bad faith refusal to settle. *See*

12

*W. Am. Ins. Co. v. RLI Ins. Co.*, 698 F.3d 1069 (8th Cir. 2012); *Nat'l Sur. Corp. v. Hartford Cas. Ins. Co.*, 493 F.3d 752 (6th Cir. 2007) (collecting cases); *Twin City Fire Ins.*, 23 F.3d at 1178; *Hartford Accident & Indem. Co. v. Aetna Cas. & Sur. Co.*, 792 P.2d 749 (Ariz. 1990); *Morrison Assurance Co.*, 600 So. 2d at 1151; *St. Paul Fire & Marine Ins. Co. v. Liberty Mut. Ins. Co.*, 353 P.3d 991 (Haw. 2015); *Scottsdale Ins. Co. v. Addison Ins. Co.*, 448 S.W.3d 818 (Mo. 2014); *Truck Ins. Exch. of Farmers Ins. Grp. v. Century Indem. Co.*, 887 P.2d 455, 460 (Wash. Ct. App. 1995).

¶ 26    According to these courts, equitable subrogation in this context works to remedy the situation because the primary insurer's contractual obligation to the common insured "is not reduced merely because of another contract between the insured and its excess insurer." *Peter v. Travelers Ins. Co.*, 375 F. Supp. 1347, 1350 (C.D. Cal. 1974).

¶ 27    TDC asserts, and PPIC does not seem to disagree, that the reasoning of these decisions is sound and fully consistent with well-accepted principles of Colorado insurance law.

C.    The Division in *Unigard* Did Not Recognize an "Independent Equitable Subrogation Claim" and Its Decision is Fully Consistent

13

with Settled Colorado Law Recognizing Only Derivative Equitable Subrogation in the Insurance Context

¶ 28    Nevertheless, PPIC insists that regardless of the viability of a "standing in the shoes" claim, it is not pursuing such a claim. It asserts that it is not seeking equitable subrogation "in the shoes" of Dr. Singh, but an "independent equitable claim" — in which it need only prove that it "equitably should have been paid" by TDC — a theory recognized, according to PPIC, in *Unigard*, 907 P.2d 94. We disagree.

¶ 29    First, the issues presented in this case were not raised in *Unigard*, and the division did not address them. In *Unigard*, both insurers had agreed to settle and had paid differing portions of the settlement amount, which exceeded the limit of the primary coverage. The primary insurer had paid less than the limit of its primary coverage, and the insurers had reserved the right to a judicial determination of what each of them owed. The issue then was whether the primary insurer had to pay back the excess insurer for amounts paid by the excess insurer up to the limit of the primary coverage. Whether Colorado recognized an "independent,"

or non-derivative, claim of equitable subrogation simply had nothing to do with the case.

¶ 30    Second, the principles of equitable subrogation discussed by *Unigard* must be considered in that context.  The division first noted that under contract principles, in some jurisdictions in the circumstances before it, "the excess insurer succeeds, under the excess policy's subrogation provisions, to the insured's contract rights under the primary policy."  *Id.* at 99.  The Washington and New Mexico cases cited by the division as supporting this theory both addressed the situation where two insurers are battling over whether one of them has an *absolute* obligation to pay, and therefore should reimburse the other.  And, the decisions turned on the terms of the primary policies.  *See State Farm Mut. Auto. Ins. Co. v. Found. Reserve Ins. Co.*, 431 P.2d 737, 741-42 (N.M. 1967) ("Plaintiff had a right of subrogation against defendant by contract."); *Millers Cas. Ins. Co., of Tex. v. Briggs*, 665 P.2d 887, 890 (Wash. 1983) (subrogating excess insurer to the primary insurer based on "the terms of its policy and under general principles").

¶ 31    The *Unigard* division also noted a theory used in other jurisdictions "that equity will create a subrogation right in the

excess insurer because of that insurer's payment of an obligation that equitably should have been paid by the primary insurer." 907 P.2d at 99. The Pennsylvania case cited for the "equitably should have been paid" formulation also concerned a nondiscretionary obligation of the primary — to defend a claim — and turned on the terms of the primary policy. *See F.B. Washburn Candy Corp. v. Fireman's Fund*, 541 A.2d 771, 774 (Pa. Super. Ct. 1988). Moreover, the *F.B. Washburn* court itself based its decision on derivative equitable subrogation principles to determine whether an excess insurer could recover:

> "It has often been said that the equitable doctrine of subrogation places the subrogee in the precise position of the one to whose rights and disabilities he is subrogated." Based on this principle, we are of the opinion that [the excess insurer and subrogee] *stands in the same place* as [the insured] . . . .

*Id.* (emphasis added) (quoting *Allstate Ins. Co. v. Clarke*, 527 A.2d 1021, 1024 (Pa. Super. Ct. 1987)).

¶ 32     Thus, fairly read, *Unigard* is fully consistent with our interpretation of fundamental principles of Colorado insurance law that any subrogation rights sought by an excess insurer in the settlement context are derivative of the insured's as set forth by the

16

primary insurance policy's terms. We simply do not read *Unigard* as implying that the rights of the insured under the primary policy are irrelevant. To the contrary, liability under either theory discussed in *Unigard* turned on the obligations imposed by the primary policy. And, the division observed that the debtor was asserting "a *contract* claim, based on the terms of the [primary] policy, that otherwise could have been enforced by [the insured]." *Unigard*, 907 P.2d at 99.

D.  Under the Insurance Policy, TDC's Legal Obligation Was to Make Reasonable Settlement Decisions; Equity Will Not Require TDC to Pay Something It Was Otherwise Not Legally Obligated to Pay

¶ 33    Whether derivatively based or not, an equitable subrogation claim allows for recovery only against obligated parties. Conversely, equity will not impose on someone an obligation not otherwise required by law. *See, e.g., Blue Cross of W. N.Y. v. Bukulmez*, 736 P.2d 834, 840 (Colo. 1987); *see also In re Masonite Corp. Hardboard Siding Prods. Liab. Litig.*, 21 F. Supp. 2d 593, 607 (E.D. La. 1998) (Equitable subrogation "is not an unchecked principle of conscience that allows recovery whenever it seems fair or right to make the

17

defendant pay for the subrogor's losses that defendant is not legally obligated to pay.").

¶ 34    As discussed above, in the insurance context, whether an insurer is legally obligated depends on the terms of the insurance policy and the relationship between or among the parties to that policy. *See DeWitt*, 218 P.3d at 323; *Bainbridge*, 159 P.3d at 751; *Union Ins. Co.*, 724 P.2d at 82. In this case, TDC's settlement obligation was defined by its contract with Dr. Singh. TDC bargained for the discretion to settle, subject only to the legally imposed obligation of good faith, and that bargained-for discretionary obligation was the only potential source of any obligation TDC had to settle. *See Hazelrigg*, 228 F.2d at 957 (A primary insurer "is not required to prophesy or foretell the results of litigation at its peril. If it acts in good faith and without negligence in refusing the proffered settlement, it has fulfilled its duty to its insured, and those in privity with it.").

¶ 35    Absent a showing that a contractual provision violates public policy, equity should not be employed to defeat a party's bargained-for contractual rights. *See Dover Assocs. Joint Venture v. Ingram*, 768 A.2d 971, 974 (Del. Ch. 2000). That seems to be particularly

18

so when a primary insurer is being sued by another entity with which it has no contractual relationship, to which it owes no independent obligation imposed by law (as PPIC concedes), and whose actions it has no ability to control. As TDC points out, it is inequitable to allow an excess carrier to nullify the primary insurer's contractual right merely because the excess insurer disagrees with the primary insurer over the risk of exposure.

¶ 36     Indeed, PPIC presents no good reason for ignoring the parties' rights under the insurance contract. To the contrary, if PPIC were allowed to seek recovery without a showing that TDC acted in bad faith in ordinary circumstances such as alleged here, an excess carrier could accept a pretrial settlement offer within the primary insurer's policy limits, knowing it could collect reimbursement from the primary carrier for whatever settlement amount it, as the "equitable subrogee," paid. This outcome would occur regardless of whether the primary carrier had fulfilled its contractual duty to its insured to make settlement decisions reasonably and in good faith. Were we to accept PPIC's argument that equitable subrogation applies where the excess insurer shows merely that it "had a reasonable, good faith belief that it should make the payment to

19

settle the claim," we would subvert a primary insurer's contractual right to control the insured's case by effectively giving control of settlement decisions to the excess insurer. That would incentivize excess carriers to settle claims within primary policy limits without regard to damages or liability, and with no risk to them.

E.    As Applied to Equitable Subrogation Claims in the Insurance Context, the *Hicks* Factors Are, At Best, Incomplete

¶ 37    In *Hicks v. Londre*, the court set forth specific requirements for allowing equitable subrogation in mortgage/lien cases.[1] Although, at PPIC's urging, the district court analyzed PPIC's equitable subrogation claim under these factors, we conclude that they have limited relevance in the context of Colorado insurance law. The *Hicks* factors were expressly tailored to the situation in that case, where a creditor was seeking to leapfrog another creditor in priority vis-a-vis the debtor's real property because it had paid the mortgagor's obligations to the primary and secondary creditors.

---

[1] Those factors are: (1) the subrogee made the payment to protect his or her own interest; (2) the subrogee did not act as a volunteer; (3) the subrogee was not primarily liable for the debt paid; (4) the subrogee paid off the entire encumbrance; and (5) subrogation would not work any injustice to the rights of the junior lienholder. *Hicks v. Londre*, 125 P.3d 452, 456 (Colo. 2005).

20

But, what is "inequitable" in the insurance context is, as discussed, tied to the insurance policy. *See generally DeWitt*, 218 P.3d at 323; *Unigard*, 907 P.2d at 99. Importing into insurance cases the requirements of equitable subrogation used in lien cases seems like forcing the proverbial square peg into a round hole.

¶ 38 Moreover, as our supreme court has noted, "the roots of equitable subrogation lie in the concept of remedying a mistake." *Joondeph v. Hicks*, 235 P.3d 303, 307 (Colo. 2010). Applying the *Hicks* factors overlooks the central "mistake" in this context — whether a primary insurer's failure to settle was in bad faith. Without that, there would be no wrong or mistake for equity to remedy. *See Steiger v. Burroughs*, 878 P.2d 131, 135 (Colo. App. 1994); *Fed. Deposit Ins. Corp. v. Mars*, 821 P.2d 826, 832 (Colo. App. 1991).

F.    PPIC Was Required to Plead and Prove That TDC's Refusal to Accept the $1 Million Offer of Settlement Was Made in Bad Faith

¶ 39 We hold that in the insurance context, Colorado law recognizes equitable subrogation only as a derivative right dependent on the obligations of the insurance contract. Consequently, PPIC could assert an equitable subrogation claim

21

against TDC only to the extent of Dr. Singh's rights under his insurance contract with TDC, which only obliged TDC to exercise its discretion to settle reasonably under the circumstances. *Goodson,* 89 P.3d at 415.

¶ 40    However, in concluding that PPIC must plead and prove that TDC acted in bad faith, we reject TDC's proposed two-part bad faith test, as set forth in *Continental Casualty Co. v. Reserve Insurance Co.,* 238 N.W.2d 862 (Minn. 1976), that would also require proof of the insured's liability. Under Colorado law, "[t]he basis for tort liability is the insurer's conduct in unreasonably refusing to pay a claim and failing to act in good faith, not the insured's ultimate financial liability." *Goodson,* 89 P.3d at 414; *see Travelers Ins. Co. v. Savio,* 706 P.2d 1258, 1270 (Colo. 1985) ("[B]ad faith depends on the conduct of the insurer regardless of the ultimate resolution of the underlying compensation claim.").

## V.    Disposition

¶ 41    PPIC argued in its reply brief in support of its summary judgment motion that its claim

> is premised on the general equitable remedy of equitable subrogation, as fleshed out in the *Hicks* standard. It is *not* premised on the

22

> assertion that it has stepped into the shoes of its insured, Dr. Singh, through its payment of the settlement, and a follow-on argument that Dr. Singh could make that TDC's refusal to settle was in bad faith.

PPIC made the same argument in opposing TDC's motion to dismiss. However, we have concluded that without an assertion that TDC acted in bad faith, PPIC's equitable subrogation claim is not legally viable.

¶ 42 Therefore, because PPIC's claim for recovery is not supported by law, we reverse the district court's order granting summary judgment for PPIC and remand for entry of judgment of dismissal in TDC's favor. *See, e.g., Goeddel v. Aircraft Fin., Inc.*, 152 Colo. 419, 382 P.2d 812 (1963) (dismissal is appropriate when there is an absence of law supporting the plaintiff's claim); *Mahaney v. City of Englewood*, 226 P.3d 1214, 1220 (Colo. App. 2009) (reversing grant of summary judgment in favor of appellee and remanding for entry of judgment in favor of appellant); *Geiger v. Am. Standard Ins. Co. of Wis.*, 192 P.3d 480, 484 (Colo. App. 2008) (same).

¶ 43 The district court's grant of PPIC's summary judgment motion is reversed, and the case is remanded to the district court to enter summary judgment in TDC's favor.

JUDGE J. JONES and JUDGE RICHMAN concur.